Belknap
No. 6714

### STATE OF NEW HAMPSHIRE

v.

### YVONNE E. SHIPPEE

December 31, 1975

*Warren B. Rudman,* attorney general, and *Edward N. Damon,* attorney, by brief, for the State.

*Wescott, Millham & Dyer* and *Gary P. Westergren,* by brief, for the defendant.

PER CURIAM. The only question before us is whether this indictment should have been dismissed for lack of evidence to support it. The indictment was under RSA 590-A:1-3 (Laws 1967,

346:1), the statute in force at the time of the alleged offense. *State v. Morin,* 111 N.H. 113, 115, 276 A.2d 476, 477 (1971). So far as material here, it charged that the defendant "did act as a lookout" for her husband while he committed a burglary to which he later pleaded guilty.

At the close of the State's case, the defense moved for a directed verdict and dismissal on the ground that no evidence had been introduced sufficient to support a verdict of guilty. The motion was denied and the defendant excepted. The jury was unable to reach a verdict and was discharged. The defendant then moved that the issues raised by her motion be transferred to the supreme court under RSA 490:9 and RSA 491:17. This motion was granted by *Loughlin,* J.

The narrow factual question here, whether the jury could find beyond a reasonable doubt that the defendant did act as a lookout for her husband, requires an examination of the essential facts. The record discloses that on the afternoon of September 9, 1971, the defendant, accompanied by a puppy dog and a kitten, sat in an automobile parked in the yard of the Talbot residence in Belmont and within 10-12 feet of the house. While she did so, her husband stole certain articles from the house and brought them to the car. He did not testify as at the time of the trial he was in prison in another State.

There is no evidence that the defendant got out of the car where she would have had a much better view of anyone approaching. Nor is there any evidence that she was glancing about as she sat there. In her statement, given voluntarily to the police after she had been properly warned of her rights, she said that she was in the automobile while her husband went to the house to ask directions; that when the house owner's son approached her, she asked him for directions to Interstate 89; that on discovering that the house door was open, the son took the keys to the car and said he was calling the police; and that she then left the car and met her husband walking down the road. At the time of trial the owner's son was out of the jurisdiction and did not testify.

Aside from her presence and her findable knowledge of what her husband was doing, there was no evidence that the defendant did anything indicating she was acting as a lookout. So far as appeared, she remained in the automobile, on the west side of the house facing a garage which extended the width of the drive. In this position she could not see the south side of the house where

entry may have been made through a partially open window, nor could she see the north side of the house, where there was access through a porch elevated above the drive. The porch was visible from the drive only from a position on the north side of the drive.

It is true that circumstantial evidence can support a finding of guilt beyond a reasonable doubt. *State v. Canney,* 112 N.H. 301, 294 A.2d 382 (1972). It is also the law that "the trier may draw reasonable inferences from facts proved and also inferences from facts found as a result of other inferences, provided that they can be reasonably drawn...." *State v. Palumbo,* 113 N.H. 329, 330, 306 A.2d 793, 795 (1973).

The difficulty the prosecution faces here is the lack of evidence of the actions which a lookout would ordinarily have taken. Neither her conduct nor her demeanor furnished any persuasive evidence that the defendant was on the watch. On this record, a jury could not find beyond a reasonable doubt that she acted as a lookout for her husband.

*Defendant's exception sustained; indictment dismissed.*