Hillsborough
No. 78-063

THE STATE OF NEW HAMPSHIRE

v.

ALVAH GOODWIN

December 20, 1978

*Thomas D. Rath*, attorney general (*Richard B. McNamara*, assistant attorney general, orally), for the State.

*Bruce E. Kenna*, of Manchester, by brief and orally, for the defendant.

LAMPRON, C.J.   The defendant was indicted for being an accomplice to kidnapping, in violation of RSA 626:8 and 633:1, and being an accomplice to aggravated felonious sexual assault, in violation of RSA 626:8 and 632-A:2 (Supp. 1977). A jury trial resulted in guilty verdicts on both counts. The principal, Francis Taylor, has not yet been tried. *See State v. Taylor*, 118 N.H. 859, 395 A.2d 1239 (1978). The trial court found at the time of sentencing that the evidence proved that the victim was not returned without serious bodily injury, and ruled that the kidnapping was a class A felony rather than class B. RSA 633:1 II; RSA 625:11 VI. The defendant was sentenced to a term of seven-and-one-half to fifteen years on the accomplice-to-the-aggravated-sexual-assault charge, and to a term of four to fifteen years on the accomplice-to-kidnapping charge, the sentences to be served consecutively. Defendant's exceptions to rulings of the court before, during, and after trial were reserved and transferred by *Dunfey*, J.

The defendant raises three issues before this court. He challenges the sufficiency of the evidence to support his convictions; specifically, he claims that the judge erred in denying his motions to dismiss and to set aside the verdicts. He next argues that the court incorrectly interpreted "serious bodily injury" as used in the kidnapping statute, RSA 633:1 II, to include rape in and of itself, thus turning what would otherwise be a class B felony into a class A felony. Finally, the defendant asserts that the length of the sentence imposed by the court constitutes cruel and unusual punishment in violation of the eighth amendment to the United States Constitution and part I, article 18 of the New Hampshire Constitution. For the reasons elaborated upon below, we affirm defendant's accomplice-to-aggravated-felonious-sexual-assault conviction, but hold that he was guilty as an accomplice to a class B felony kidnapping, not class A felony kidnapping.

The evidence shows that on February 1, 1977, a 17-year-old high-school female student was walking home from school in Manchester. A car in which there were two men pulled up next to her. The defendant owned the car and was riding in the front passenger seat. The driver, Francis Taylor, asked the victim for directions to Massachusetts. Acting as if confused, he climbed out of the car, and

spread a map on the hood. While the victim was leaning over the map to point out the way, Taylor grabbed her from behind and forcibly put her into the car. Taylor then got in beside her and drove off. During this time, the defendant sat in the passenger seat drinking a beer.

Taylor then ignored the victim's directions, and headed north toward Hooksett. At one point the defendant tried to converse with the girl, but he said nothing threatening. In Hooksett, they stopped at a small store. After instructing the defendant to "make sure she doesn't go anywhere," Taylor went inside to buy cigarettes and beer. In Taylor's absence, the victim pleaded with the defendant to take her home. The defendant responded by putting his hand on her leg and answering that he could not because Taylor would get angry.

Taylor returned and they continued to drive north toward Concord. On two separate occasions they stopped on deserted back roads, at which point Taylor attempted to sexually assault the victim. The defendant did not actually participate, except at that point he told Taylor not to hurt the girl. After these incidents, Taylor suggested that they go to the defendant's apartment in Hillsborough, and he drove there.

Upon reaching the defendant's apartment, the defendant was the first to leave the car. He unlocked the door to the apartment. Taylor followed with the girl, took her into the bedroom and while the defendant was present raped her. At one point when the victim's cries were loud, the defendant picked up a large knife which was in the room, and waved it at Taylor, as if to make him stop. Nonetheless, on Taylor's command, he put the knife down.

Taylor then told the victim that she could not go home until she satisfied Mr. Goodwin. The defendant then stated, "she can stay overnight with me, and then I'll take her home in the morning." Taylor ordered the victim to sit on the bed. The defendant then sat down beside her, put his arm around her shoulders, and tried to kiss her, but stopped when the victim pushed him away.

Taylor and a third man, who entered the apartment, then agreed to take the victim home. They drove to Manchester and left the victim within half a block of her house. Using the victim's descriptions of Taylor and Goodwin, the Hillsborough police arrested the defendant the next day.

## I. *Motions To Dismiss and To Set Aside Verdict*

The defendant was convicted of being an accomplice to the kidnapping and rape allegedly committed by Francis Taylor. RSA 626:8 (III), provides in pertinent part that:

> A person is an accomplice of another person in the commission of an offense if . . . with the purpose of promoting or facilitating the commission of the offense, he solicits such other person in committing it, or aids or agrees or attempts to aid such other person in planning or committing it. . . .

The defendant asserts that there was insufficient evidence to support a finding that he participated as an accomplice in the kidnapping and rape because he was merely present and had no duty to prevent the commission of the crimes; and he was so highly intoxicated that it was impossible for him to have the necessary mental state to make him liable as an accomplice.

■ ■ Mere presence at the scene of a crime is insufficient to make a person criminally responsible. *State v. Shippee*, 115 N.H. 694, 349 A.2d 587 (1975). Nevertheless, presence can be enough to prove complicity if the presence is intended to, and does, aid the primary actor. *Long v. United States*, 360 F.2d 829, 835 (D.C. Cir. 1966). "Presence is thus equated to aiding and abetting when it is shown that it designedly encourages the perpetrator, or facilitates the unlawful deed. . . ." *Bailey v. United States*, 416 F.2d 1110, 1113–14 (D.C. Cir. 1969). Moreover, "the circumstances under which the defendant is present . . . may be such as to warrant the jury inferring beyond a reasonable doubt that he sought thereby to make the crime succeed. . . ." 1 F. Wharton, Criminal Law § 114, at 60 (Supp. 1978).

■ In reviewing a trial court's denial to set aside the verdict based on the insufficiency of the evidence, "this court must consider the evidence in the light most favorable to the State, which is entitled to all reasonable inferences that arise from the evidence." *State v. Berry*, 117 N.H. 352, 355, 373 A.2d 355, 357 (1977); *see State v. Breest*, 116 N.H. 734, 741, 367 A.2d 1320, 1326 (1976). Although the State must establish guilt beyond a reasonable doubt on all the essential elements, it may rely on circumstantial, rather than direct, evidence. *State v. Palumbo*, 113 N.H. 329, 330, 306 A.2d 793, 796 (1973).

■ Based on the evidence the jury could have found that the defendant was not an innocent bystander. The defendant and Taylor were friends. The defendant owned the instrumentalities crucial for both crimes, the car and the apartment where the rapes occurred. Although the evidence shows that the defendant took no particularly hostile or aggressive actions against the victim, the jury could have found that the defendant aided the principal in committing the

crimes by enticing the victim to cooperate and not to escape. When Taylor left the car at the store in Hooksett, the defendant put his hand on the victim's knee and told her she could not leave. At the apartment, when the victim struggled with Taylor, the defendant told her, "Don't struggle with him, or he'll probably hurt us both." The jury could reasonably conclude that the defendant's presence facilitated and encouraged Taylor's actions.

■ The defendant argues, however, that his advanced state of intoxication prevented him from having the mental intent to aid the principal. It is for the jury to resolve whether intoxication negates the element of intent. RSA 626:4; *State v. Caldrain*, 115 N.H. 390, 342 A.2d 628 (1975); *State v. Warren*, 114 N.H. 196, 317 A.2d 566 (1974); *State v. Plummer*, 117 N.H. 320, 374 A.2d 431 (1977). There was evidence that the defendant had been drinking heavily that day, and that he continued to drink during the commission of the crime. Nevertheless, the defendant was able to converse fairly coherently. He was sufficiently lucid while they were driving to warn Taylor, "It's icy, you should slow down." The defendant was sufficiently aware of Taylor's activities to tell him not to hurt the girl. Although the victim did testify that the defendant smelled heavily of beer, she stated that "[h]e knew what he was talking about."

■ In the face of all the evidence, a reasonable jury could have found beyond a reasonable doubt that the defendant had the intent to aid the principal in the commission of the kidnapping and rape, and that he did in fact aid the principal. Therefore, the trial court correctly denied the defendant's motions to set aside the convictions due to the insufficiency of the evidence.

II. *Sufficiency of the evidence to sustain the finding that victim was not released without bodily injury.*

The defendant next contends that the trial court improperly upgraded the kidnapping conviction from a class B felony to a class A felony. Kidnapping is a class B felony, if "the actor voluntarily releases the victim without serious bodily injury and in a safe place prior to trial." RSA 633:1 II. Serious bodily injury is "any harm to the body which causes severe, permanent, or protracted loss of or impairment to the health or function of any part of the body." RSA 625:11 VI. The defendant argues that the State introduced no evidence to prove that the victim suffered injuries to meet the level of serious bodily injury defined in the statute and that the sentence imposed—four to fifteen years—is beyond that statutorily authorized for a class B felony.

The defendant asserts that the victim's mental anguish should not be considered in deciding whether the victim suffered serious bodily injury. Mental harm is expressly included in the definition of serious personal injury in the sexual assault statute. RSA ch. 632-A (Supp. 1977). " 'Serious personal injury' means offensive bodily injury or disfigurement, extreme mental anguish or trauma, disease or loss or impairment of a sexual or reproductive organ." RSA 632-A:1 III (Supp. 1977). The defendant contends that the inclusion of mental harm in the definition of serious personal injury but not in the definition of serious bodily injury was deliberate. Specifically, he argues that it was the legislative intention to exclude mental harm as an aggravating element in the kidnapping statute.

We disagree with the defendant's conclusion that psychological injury is not included within the definition of "serious bodily injury." The provisions of the Criminal Code are to "be construed according to the fair import of their terms and to promote justice." RSA 625:3; *State v. Scott*, 117 N.H. 996, 998, 380 A.2d 1092, 1093 (1977).

■ ■ The definition of serious bodily injury is not limited to physical injury; it embraces "severe, permanent or protracted loss of or impairment to [one's] *health."* (Emphasis added.) RSA 625:11 VI. Health means the state of being sound in both body and mind. *Venable v. Gulf Taxi Line,* 105 W. Va. 156, 161, 141 S.E. 622, 624 (1929); Webster's Third New International Dictionary (1961). Thus a fair reading of "serious bodily injury" could include within its definition the serious psychological injuries of a rape victim. Therefore, the trier of fact may consider mental anguish of a rape victim to determine whether the victim has suffered serious bodily injury.

Other courts have held that as a matter of law rape is sufficient harm to upgrade a kidnapping conviction. *See, e.g., State v. Corn,* 223 Kan. 583, 575 P.2d 1308 (1978); *State v. Oakes,* 373 A.2d 210 (Del. 1977); *People v. Chessman,* 38 Cal. 2d 166, 238 P.2d 1001 (1951). *See generally* Annot., 11 A.L.R.3d 1053 (1967). These cases, however, were decided under statutes which required only some harm, not "serious bodily injury."

■ ■ The aggravated felonious sexual assault statute includes eleven categories of offenses. RSA 632-A:2 I–XI (Supp. 1977). Serious bodily injury is not within the definition of any of them. The circumstances and effect on the victim will vary depending on which of the eleven offenses has been committed. In view of the different categories of offenses and the existing definition of serious bodily injury, we refuse to hold as a matter of law that every aggravated

felonious sexual assault will constitute sufficient serious bodily injury to make an accompanying kidnapping a class A felony. Instead, this determination is a matter of fact, and whether a rape victim has suffered serious physical or psychological injury must be presented to the jury as would evidence of any other element of the crime. *See Coker v. Georgia*, 433 U.S. 584, 602 n.1 (1977). (Powell, J., concurring); *People v. Caudillo*, 146 Cal. Rptr. 859, 580 P.2d 274 (1978).

▮ Finally, we must decide whether the evidence adduced at trial supports a finding that the victim was not released without serious bodily injury. There is no question that the offense committed against the victim was despicable and morally outrageous; nevertheless, we are confined to the intent of the words of the statute and the evidence presented at trial. To support a finding of felony A kidnapping, the injury to the victim's physical or mental health must be severe, permanent, or protracted in nature. The doctor who examined the victim after the rape testified that the victim suffered superficial lacerations. Neither he nor any other witness testified that there was any severe, permanent, or protracted injury to the sexual organs. Nor was there any evidence of the degree of severity of the injury to the victim's psychological state.

▮ Furthermore, the trial court in its lengthy and detailed instructions to the jury failed to instruct them that the kidnapping would constitute the more serious crime of a class A felony only if the victim had been subjected to serious bodily injury before being released in a safe place. Because the instruction did not include the circumstances necessary to convict under the higher grade, it lacked one of the constituent elements necessary to support a jury verdict for the class A felony. *See* 1 E. Devitt & C. Blackmar, Federal Jury Practice and Instructions § 13.04 (1977). Although the jury was not instructed on the elements of felony A kidnapping, the judge decided on his own at the time of sentencing that the evidence supported a conviction for felony A kidnapping. This fact-finding was improper; it invaded the domain of the jury. *See State v. LeClair*, 118 N.H. 214, 221, 385 A.2d 831, 835 (1978); *State v. Ferris*, 249 A.2d 523 (Me. 1969); *Carey v. State*, 91 Idaho 706, 429 P.2d 836, 840 (1967). By this action, defendant was deprived of his right to have the jury decide whether the State met its burden of proof on all the elements required to support a conviction for felony A kidnapping. Therefore, defendant's conviction for felony A kidnapping cannot stand. *See People v. Hines*, 572 P.2d 467, 470 (Colo. 1978). The issue of defendant's guilt as an accomplice to kidnapping, however, was sub-

mitted to the jury, and the jury could have properly found him guilty of felony B kidnapping.

Accordingly, the sentence imposed by the trial court for felony A kidnapping must be vacated, and the case remanded to the trial court for sentencing with felony B standards.

In view of this decision, it is not necessary to consider defendant's claim that his current sentence imposes cruel and unusual punishment. It should also be noted that the defendant retains the right of review of his sentences after imposition of the new sentence. RSA 651:57–60 (Supp. 1977).

*Remanded.*

GRIMES, J., did not sit; the others concurred.