**Genaro DIAZ, Defendant-Appellant,**

v.

**STATE of Indiana, Plaintiff-Appellee.**

**No. 4–782A208.**

Court of Appeals of Indiana,
Third District.

Jan. 27, 1983.

F. Laurence Anderson, Jr., Gary, for defendant-appellant.

Linley E. Pearson, Atty. Gen., Joseph N. Stevenson, Deputy Atty. Gen., Indianapolis, for plaintiff-appellee.

GARRARD, Judge.

Diaz was tried by jury and was convicted of rape. IC 35–42–4–1.

The evidence favorable to the verdict shows that Diaz and his companion, Tinajero, got the sixteen year old victim into their auto and drove to "Beer Can Alley." There they stopped and Tinajero, who was the driver, pulled the victim so she was lying across the front seat. Diaz got in the front seat and pulled down the victim's pants, and the victim began kicking him. Tinajero said, "I will get her" and Diaz returned to the back seat of the auto. He then held her down by the shoulders and struck her face every time she tried to kick or cry, while Tinajero had intercourse with her. They were discovered by a police officer and the two men were arrested while the victim was taken to the hospital.

Diaz contends his conviction is contrary to law because he did not have intercourse with the victim. The argument ignores IC 35–41–2–4 which provides that any person who "knowingly or intentionally aids ... another person to commit an offense commits that offense ...." Proof that Diaz was an accessory supports his conviction of the offense. *Ralston v. State* (1980), Ind.App., 412 N.E.2d 239. As long as penetration occurred and Diaz participated in the offense, it does not matter that he did not have intercourse with the victim. *Williams v. State* (1981), Ind., 417 N.E.2d 328.

For these same reasons evidence of the "rape kit" which tended to corroborate that the victim had intercourse was properly admissible to establish commission of the

offense, even in the absence of evidence that Diaz had intercourse with anyone.

■ Diaz next asserts his statement given to police shortly after his apprehension should have been suppressed as not knowingly, intelligently and voluntarily given. He asserts as the basis for this claim his lack of familiarity with the English language.

Diaz was originally advised of the *Miranda* rights in English and signed a waiver of rights form at 2:00 p.m. Sgt. Baughman read aloud from one copy while Diaz followed on another copy. Diaz would stop Baughman when he encountered words which he did not understand and ask what they meant. Baughman would explain what it meant. They finished reading. Baughman asked Diaz if he understood it completely. Diaz said he did.

The officers proceeded to take Diaz's statement. Evidently they had little communication problems as to the questions and answers found on page one of the two page statement (at 371 in the record). But then Diaz paused for a long time, and Baughman's efforts to explain his question seemed unavailing. So they asked Officer Torres to come in because Diaz did not understand all of what was said.

The written statement states that Torres arrived at 2:37 p.m. Torres re-read to Diaz in Spanish everything on the statement up to the point of interruption after first having re-read the *Miranda* warnings in Spanish and ascertaining that Diaz understood them at that point. Torres occasionally responded in Spanish with some additional detail as clarification to his prior answers in English, which Torres added in hand-printed interlineation to the typed text. They concluded the statement at 3:20 p.m. Diaz then signed the paragraph stating that he had read the statement and waiver, consisting of three pages, and wrote the time of completion. Torres was present when Diaz did so, and added his signature to the certification.

From the totality of the foregoing circumstances the court could properly conclude that Diaz both understood and waived his *Miranda* rights and that his statement was knowingly, intelligently and voluntarily given. No error has been shown. *Powell v. State* (1982), Ind., 437 N.E.2d 969, 970.

Finally, Diaz argues that the trial judge erred in *sua sponte* ordering the discontinuance of the use of the court-appointed Spanish-English interpreter during Diaz's testimony. The record contradicts the assertion.

■ The interpreter was appointed in accord with IC 35–1–8–2 [repealed]. Indiana law has long held that where an interpreter is appointed the manner in which the examination is conducted is largely within the discretion of the trial court. *Skaggs v. State* (1886), 108 Ind. 53, 8 N.E. 695, 697. *Cf. Jennings v. State* (1973), 156 Ind.App. 640, 297 N.E.2d 909.

■ At trial Diaz initially testified in Spanish through the interpreter but soon stated that he had understood the prosecuting witness' testimony without the necessity of the interpreter. On motion by the state the court asked the interpreter's present opinion as to Diaz's ability in English, and the interpreter responded that Diaz could understand English. The court then stated:

> "I'm going to try to do this in English. I want [the interpreter] to stand by, but we are going to try it in English . . . I want you to begin and start and do it in English. Now, listen carefully to him and try to answer it in English. If you can, okay?"

Thereafter the interpreter assisted when complex questions were asked and at the conclusion of the direct examination counsel utilized the interpreter to briefly review with Diaz in Spanish the key points of his testimony.

On appeal Diaz makes no assertion that anything was misunderstood by him or that he made any erroneous answers because of his limitations in English. No abuse of the court's discretion has been shown.

The conviction is affirmed.

HOFFMAN, P.J., and STATON, J., concur.