Hillsborough
No. 87-400

THE STATE OF NEW HAMPSHIRE

v.

SHERMAN T. ARILLO

December 28, 1988

*Stephen E. Merrill,* attorney general (*T. David Plourde,* assistant attorney general, on the brief), by brief for the State.

*Joanne Green*, assistant appellate defender, of Concord, by brief for the defendant.

## MEMORANDUM OPINION

THAYER, J.   The defendant was convicted following a jury trial in Superior Court (*Pappagianis*, J.) as an accomplice to armed robbery, and sentenced to serve from 3 to 7 years in prison. The defendant appeals on the ground that the evidence was insufficient to establish beyond a reasonable doubt that he was a voluntary and active participant in the robbery. For the reasons that follow, we affirm.

The following facts are contained in the record. On October 11, 1983, at approximately 7:00 p.m., the defendant entered the Bright Spot Variety Store on East Dunstable Road in Nashua. He purchased some candy from Leonard Boucher, the owner of the store, and left. About twenty minutes later, a man named James "Shorty" Mason, whom the owner recognized as a regular customer, entered the store, followed by the defendant.

Mr. Boucher was reading some mail at the time, and had his back to the two when he heard Mason say, "This is a holdup. Give me all your money." Boucher thought that Mason was playing a practical joke on him, so he casually responded, "I have no money here." Catching some movement out of the corner of his eye, Boucher then looked up and saw Mason stepping back, lifting a rifle, and pointing it toward his head. Boucher saw the defendant standing beside Mason. The defendant said nothing during the course of this interaction. After a very short period of time, Mason lowered the rifle and, with it, pushed the defendant toward the door. The two left without taking any money and got into a car, where two others, Richie Matthews and Daryl "Leroy" Franklin, had been waiting. As they drove off, Boucher took down the license plate number, and he then contacted the police. While driving from the scene, Franklin and Mason began to argue, and eventually Franklin pulled the car over to the side of the road, dragged Mason out of the car, and the two began to fight. While this was going on, the defendant got out of the car and ran off.

Later that same evening, the police arrested Mason, whose interview assisted the police in determining that the defendant might have been a participant in the robbery. At about 1:30 a.m. the police went to the defendant's residence, where the defendant told the police that he knew he should not have been with Mason, and that he had told Mason not to use the rifle. The defendant said that he did not know why he had gotten involved because he did

not need the money, and that he knew it was a stupid thing to do. The police then arrested the defendant and brought him to the Nashua police headquarters, where the defendant signed a written confession, which was later entered into evidence, in which he revealed the following sequence of events leading up to the robbery.

Prior to the robbery, the defendant had been driving around Nashua with Matthews and Franklin. At some point, Matthews had stated that he wanted money and that he and Franklin would get it "anyway [sic] that they could," including by robbery. The three men then drove to Mason's house in order to obtain Mason's gun. Matthews and Franklin entered Mason's house, while the defendant waited outside. Matthews, Franklin, and Mason reappeared with a rifle and joined the defendant in the car. Driving around Nashua again, the four men discussed possible hold-up sites. After ruling out two other locations, Mason suggested the Bright Spot Store. They then parked at the store, and while the other three men argued about the whereabouts of the bullets for the rifle, the defendant went into the store to buy some candy. After the defendant had made the candy purchase and exited the store, he saw Mason in the parking lot walking toward him with the rifle. Mason then said "let's go," and the defendant knew that Mason was going to rob the store. The defendant then opened the door to the store for Mason and followed him into the store. The defendant further stated in his confession that he had told his companions that a gun was not necessary, that they could do the robbery with their hands, and that he did not want anybody to get killed.

The defendant argues on appeal that the State failed to show that he took sufficient voluntary and affirmative steps to satisfy the *actus reus* requirement for accomplice liability under RSA 626:8, III(a), and that the trial court thus erred in denying his motion for acquittal notwithstanding the verdict. We do not agree.

■ Under RSA 626:8, III(a), the crime of accomplice liability requires the actor, with the requisite purpose, to have "solicited, aided, agreed to aid, or attempted to aid the principal in planning or committing the offense." *State v. Vaillancourt*, 122 N.H. 1153, 1154, 453 A.2d 1327, 1328 (1982). The crime thus requires "some active participation by the accomplice." *Id.* In deciding the issue presented, therefore, we must determine whether, based upon all the evidence and all reasonable inferences from it, when considered in a light most favorable to the State, any rational trier of fact could have found beyond a reasonable doubt that the defendant was a voluntary and active participant in the robbery. *State v. Goodwin*,

118 N.H. 862, 866, 395 A.2d 1234, 1236 (1978); *see also State v. Guay*, 130 N.H. 413, 421, 543 A.2d 910, 915 (1988).

We hold, based on the record before us, that the evidence, including all reasonable inferences to be drawn therefrom, was sufficient to support the jury's verdict. The evidence showed that the defendant had been driving around with Mason and Matthews while the robbery was being planned. The defendant was well aware of the potential for danger, yet remained with the group of would-be robbers in spite of this awareness, even though he had several opportunities to remove himself from the plan before the robbery was committed. For example, while defendant's cohorts argued about where to find the bullets for the rifle, he went into the store which he knew was to be robbed, but never attempted to abort the robbery by warning the owner. The jury could reasonably have found that the defendant first entered the store alone for the purpose of "casing" the scene. Such a finding is supported by the store owner's testimony that the robbery took place twenty minutes after the defendant had initially purchased candy, contrary to the defendant's claim that he was intercepted by Mason just as he was leaving the store after purchasing the candy. In addition, the defendant opened the door to the store so that Mason could enter with his rifle. He also entered the store and stood beside Mason throughout the robbery and fled with the others. Accordingly, we affirm the conviction.

*Affirmed.*

All concurred.