388 S.E.2d 508

**STATE of West Virginia,**

v.

**Dewey C. DAVIS.**

No. 18871.

Supreme Court of Appeals of West Virginia.

Dec. 20, 1989.

William M. Lester, III, Charleston, for Dewey C. Davis.

Roger W. Thompkins, Atty. Gen., Richard M. Riffe, Sr., Asst. Atty. Gen., Charleston, for state of W.Va.

MILLER, Justice:

The principal issue in this appeal is whether there was sufficient evidence to sustain the conviction of the defendant, Dewey Davis, for the offense of second-degree sexual assault. The defendant was also convicted of abduction and first-degree sexual abuse. The State acknowledges that since the defendant aided and abetted Gerald Davis, his son, in these crimes, it is bound by our holding in *State v. Davis*, 180 W.Va. 357, 376 S.E.2d 563 (1988). In that decision, we held that the abduction and first-degree sexual abuse convictions were invalid.[1]

■ The State's position is that while the abduction and sexual abuse convictions must be set aside, the conviction of second-degree sexual assault is valid. The defendant asserts that because of his lack of involvement, he should not be convicted at all. Our traditional rule for appellate review of a guilty verdict is contained in Syllabus Point 1 of *State v. Starkey*, 161 W.Va. 517, 244 S.E.2d 219 (1978):

"In a criminal case, a verdict of guilt will not be set aside on the ground that it is contrary to the evidence, where the state's evidence is sufficient to convince impartial minds of the guilt of the defendant beyond a reasonable doubt. The evidence is to be viewed in the light most favorable to the prosecution. To warrant interference with a verdict of guilt on the ground of insufficiency of evidence, the court must be convinced that the evidence was manifestly inadequate and that consequent injustice has been done."

The salient facts are that on February 18, 1986, the victim, who was a close friend of the Davis family, went to the defendant's mobile home to pick up her laundry. While she was in the defendant's home, the

defendant's son, Gerald Davis, followed her to the laundry room and asked her to go with him to his bedroom. She refused and Gerald tried to force her to come with him to the bedroom. In an attempt to get away from Gerald, she ran to the living room and pleaded with the defendant to help her. The defendant, who had been drinking, told her he could not help her. She tried to keep the defendant between Gerald and herself, but the defendant moved out of the way. Gerald then dragged her down the hall and into the bedroom. The defendant followed his son and the victim into the bedroom and lay next to them on the bed while Gerald raped her. Although she pleaded with the defendant to help her, the defendant merely patted her hand and told her not to worry.

I.

We reject the defendant's contention that under the foregoing facts, he was not chargeable with the sexual assault committed by his son. We recently discussed, at some length, the sufficiency of the evidence to convict a person who is not the principal perpetrator in *State v. Fortner*, 182 W.Va. 345, 387 S.E.2d 812 (1989). We outlined in *Fortner* the traditional roles of parties to a crime. We also indicated that, based on *State v. Petry*, 166 W.Va. 153, 273 S.E.2d 346 (1980), and W.Va.Code, 61–11–6 (1923),[2] a conviction could be obtained so long as the evidence showed that the defendant fit any one of these roles. We defined these categories in Syllabus Points 5 and 6 of *Fortner:*

"5. A person who is the absolute perpetrator of a crime is a principal in the first degree, and a person who is present, aiding and abetting the fact to be done, is a principal in the second degree.

---

1. In *Davis, supra,* we found that the abduction was only incidental to the second-degree sexual assault because the victim had only been moved from the front room of the mobile home to the bedroom. We also concluded that the first-degree sexual abuse conviction, which was based on the fact that immediately before the sexual assault Gerald Davis had the victim touch his penis, was not a separate offense. We af-

firmed the second-degree sexual assault conviction.

2. W.Va.Code, 61–11–6, provides, in part, that "every principal in the second degree, and every accessory before the fact, shall be punishable as if he were the principal in the first degree."

"6. 'An accessory before the fact is a person who being absent at the time and place of the crime, procures, counsels, commands, incites, assists or abets another person to commit the crime, and absence at the time and place of the crime is an essential element of the status of an accessory before the fact.' Syllabus Point 2, *State ex rel. Brown v. Thompson,* 149 W.Va. 649, 142 S.E.2d 711, *cert. denied,* 382 U.S. 940, 15 L.Ed.2d 350, 86 S.Ct. 392 (1965)."

Additionally, in *Fortner,* we dealt with the types of conduct that bear upon criminal culpability. These were summarized in Syllabus Points 9, 10, and 11:

"9. ' "Merely witnessing a crime, without intervention, does not make a person a party to its commission unless his interference was a duty, and his noninterference was one of the conditions of the commission of the crime; or unless his noninterference was designed by him and operated as an encouragement to or protection of the perpetrator." Syllabus, *State v. Patterson,* 109 W.Va. 588 [155 S.E. 661 (1930)].' Syllabus Point 3, *State v. Haines,* 156 W.Va. 281, 192 S.E.2d 879 (1972).

"10. Proof that the defendant was present at the time and place the crime was committed is a factor to be considered by the jury in determining guilt, along with other circumstances, such as the defendant's association with or relation to the perpetrator and his conduct before and after the commission of the crime."

"11. Under the concerted action principle, a defendant who is present at the scene of a crime and, by acting with another, contributes to the criminal act, is criminally liable for such offense as if he were the sole perpetrator."

Syllabus Point 9 of *Fortner* holds that merely witnessing a crime without interference is not culpable. Here, however, the defendant was not merely an unconnected passive bystander. The assault occurred in his home, and his son was the perpetrator. Furthermore, the victim looked upon the defendant as a family member because of her long association with him and referred to him as "Uncle Dewey."

The victim initially tried to get the defendant to intervene by pleading with him to help her and positioning herself behind him and away from his son. Yet, the defendant responded that he could not help her and moved out of Gerald's way. When she was dragged into the bedroom by Gerald, the defendant followed. He lay on the bed next to them watching Gerald rape her and patted her hand while advising her not to worry. These actions were sufficient to make him culpable.

Other jurisdictions have come to the same conclusion on similar facts. In both *State v. Goodwin,* 118 N.H. 862, 395 A.2d 1234 (1978), and *Commonwealth v. Henderson,* 249 Pa.Super. 472, 378 A.2d 393 (1977), neither of the defendants actually participated in the sexual assaults of the victims, but had sat by passively while their companions sexually assaulted the victims.[3] The courts, in both cases, con-

---

3. In *Henderson,* the defendant and his friend, Alvin Taylor, offered the victim a ride, and she accepted. She had known the defendant for approximately two years, had dated him on several occasions, and had frequently used drugs with him. The defendant, Taylor, and the victim drove to a motel where friends of Taylor had rented a room. At the motel, Taylor threatened to physically harm the victim and punched her on the side of her head, knocking her to the floor. When she began to fight back, Taylor pushed her onto one of the beds and raped her. While Taylor was sexually attacking the victim, the defendant merely sat on the next bed "playing with his drugs." 249 Pa.Super. at 478, 378 A.2d at 396. The Superior Court of Pennsylvania found that the defendant's "passivity during the assault would be consistent with his approv-

al and shared intent." 249 Pa.Super. at 481, 378 A.2d at 399. The court concluded that the evidence was sufficient to support the jury's finding that the defendant was an accomplice to the rape.

Similarly, in *State v. Goodwin, supra,* the defendant and the driver of the automobile, Francis Taylor, stopped a female high school student and asked her for directions to Massachusetts. Taylor grabbed the victim, forced her into the car, and drove off. While this was taking place, the defendant merely sat in his seat drinking a beer. Eventually, they went to the defendant's apartment where Taylor raped the victim in the defendant's presence. When the victim's cries grew loud, the defendant picked up a large knife and waved it at Taylor, in what appeared to be

cluded that the evidence was sufficient to support the jury's findings that the defendant's presence facilitated and encouraged the perpetrator's actions. *See also Diaz v. State*, 444 N.E.2d 340 (Ind.App.1983); *Sutton v. Commonwealth*, 228 Va. 654, 324 S.E.2d 665 (1985); *State v. McBee*, 644 S.W.2d 425 (Tenn.Crim.App.1982). Thus, we find sufficient evidence before us to support the defendant's conviction as a principal in the second degree to second-degree sexual assault.

## II.

■ The defendant also contends that the court erred in admitting evidence under a search warrant that was procured on an unsigned affidavit. Rule 41(c) of the West Virginia Rules of Criminal Procedure provides in pertinent part:

"A warrant shall issue only on an affidavit or affidavits sworn to before the magistrate or a judge of the circuit court and establishing the grounds for issuing the warrant. If the magistrate or circuit judge is satisfied that grounds for the application exist, or that there is probable cause to believe that they exist, he shall issue a warrant[.]"

The form affidavit setting out the facts for the issuance of the search warrant contained the typed name of Detective R.L. West. The form specified that his signature should be made above the typed name. This was not done, but the affidavit was properly notarized by the magistrate who issued the warrant.

At the suppression hearing, the magistrate testified that the officer had sworn to her that the facts contained in the affidavit were correct. The magistrate indicated that she had overlooked having the officer sign his name above the typed name.[4]

As might be expected, this technical point has not received a great deal of attention. The Supreme Court of Louisiana did have this identical problem in *State v. Roubion*, 378 So.2d 411 (La.1979), and, after reciting law from other jurisdictions,[5] came to this conclusion: "We hold that the affiant's signature is not essential if he failed to sign unintentionally, he was sufficiently identified in the affidavit, he was sworn by and known to the issuing magistrate, and he attested under oath to the facts recited in the affidavit." 378 So.2d at 414.

We find this statement to be a rational rule. It requires certain objective indicia of reliability to uphold the validity of a warrant which is challenged because of the lack of the affiant's signature on the affidavit. It must be shown that the affiant was sufficiently identified in the affidavit itself. Additionally, it must be shown that the affiant was sworn before and known to the issuing magistrate and attested that the affidavit facts were true. These conditions were met in this case. We, therefore, find the affidavit to be valid.

an effort to stop him. Taylor, however, ordered the defendant to put the knife down. Although Taylor had told the victim she could not leave until "she had satisfied" the defendant, the defendant left the victim alone when she pushed him away. 118 N.H. at 865, 395 A.2d at 1236. The Supreme Court of New Hampshire found that the jury could have reasonably concluded from the evidence that the defendant's presence facilitated and encouraged Taylor's actions. 118 N.H. at 867, 395 A.2d at 1237.

4. In Syllabus Point 2, in part, of *State v. Adkins*, 176 W.Va. 613, 346 S.E.2d 762 (1986), we recognized that under Rule 41(c) of the West Virginia Rules of Criminal Procedure, a magistrate could not testify at a suppression hearing as to facts allegedly given at the time the warrant was issued in order "to bolster the sufficiency of the affidavit unless such information had been contemporaneously recorded at the time the war-

rant was issued and incorporated by reference into the ... affidavit." Here, the factual sufficiency of the warrant affidavit is not challenged. The testimony was designed to cure a technical flaw on the face of the affidavit. We find such testimony to be proper.

5. *Roubion*, 378 So.2d at 414, made this survey:

"Several state courts have held that, in the absence of a statute or rule to the contrary, an affiant's signature is not essential, if he is sworn in the presence of the magistrate and is sufficiently identified in the body of the affidavit or in the jurat. *Huff v. Commonwealth*, 213 Va. 710, 194 S.E.2d 690 (1973); *State v. Higgins*, 266 N.C. 589, 146 S.E.2d 681 (1966); see 3 Am.Jur.2d Affidavits, § 15 (1962); 2A C.J.S. Affidavits § 36 (1972); but see contra: *Land Clearance for Redevelopment Auth. v. Zitko*, 386 S.W.2d 69 (Mo.1965); *State v. Barnett*, 136 Ga.App. 122, 220 S.E.2d 730 (1975)."

### III.

Finally, the defendant contends that the court erred in denying his motion for a mistrial predicated on the fact that a sexual assault counselor was allowed to approach the victim on the witness stand in the presence of the jury. After the victim finished her direct testimony, the court granted a brief recess before cross-examination. As the jury was excused, the counselor approached the witness stand to comfort the crying victim. In denying the defense motion for a mistrial, the court noted that the victim was crying before the adjournment and that the jury was leaving the courtroom when the counselor approached. Consequently, the trial court did not view the counselor's actions as unduly prejudicial.

We have consistently recognized that "[t]he decision to declare a mistrial, discharge the jury and order a new trial in a criminal case is a matter within the sound discretion of the trial court." *State v. Armstrong*, 179 W.Va. 435, 443, 369 S.E.2d 870, 878 (1988); *State v. Williams*, 172 W.Va. 295, 304, 305 S.E.2d 251, 260 (1983). There is nothing in the record before us which would indicate that the trial court abused its discretion in denying the defendant's motion for a mistrial on this ground. Thus, we find no merit in the defendant's assignment of error.

### IV.

Here the circuit court had imposed all of the sentences to run concurrently with the second degree sexual assault sentence which carried a penalty of not less than ten nor more than twenty years. In view of this fact, on remand the court need only enter an order vacating the abduction and sexual abuse convictions. The sentence imposed on the second degree sexual assault charge is affirmed.

Affirmed, in part; Reversed, in part; and Remanded