Merrimack
No. 95-880

# THE STATE OF NEW HAMPSHIRE

## v.

## JAY LAUDAROWICZ

May 9, 1997

*Jeffrey R. Howard*, attorney general (*Jeffrey S. Cahill*, assistant attorney general, on the brief and orally), for the State.

*David M. Rothstein*, assistant appellate defender, of Dover, by brief and orally, for the defendant.

BRODERICK, J. The defendant, Jay Laudarowicz, was convicted as an accomplice, *see* RSA 626:8 (1996), on two counts of attempted murder, *see* RSA 629:1 (1996) (attempt); RSA 630:1-a (1996) (first degree murder), and one count each of attempted arson, *see* RSA 634:1 (Supp. 1993), and attempted falsification of evidence, *see* RSA 641:6 (1996). On appeal, he argues that the Superior Court (*McGuire*, J.) erred in denying his motion to dismiss the charges for lack of sufficient evidence that he intended to aid in the commission of the charged acts. We affirm.

At trial, the State presented evidence of the following facts. Between nine and ten o'clock in the evening on June 17, 1994, Kimberly Waterfield and her boyfriend, Justin Mann, were parked on a trail near Garvins Falls Road in Concord. After hearing a loud noise, which Mann recognized as a gunshot, they decided to leave. Several seconds later, as he started to back the car up, a second shot was fired. A bullet shattered the passenger's side window, striking Mann in the face and spraying glass fragments on Waterfield. With Mann bleeding profusely, he and Waterfield fled the car on foot. She screamed for help but no one came to render assistance. They ran to Garvins Falls Road and eventually contacted the police.

Shortly before midnight, Michael Pickering, a friend of the defendant's brother, stopped by the defendant's house on his way home from work. The defendant told Pickering that he and his friend Stephen Duguay had gone to Garvins Falls to "[f]ind people that they could get some money off or valuable things" by "beat[ing] them up or if they had to, shoot[ing] them." The defendant described how he and Duguay had hidden behind a bush when a car pulled up, and Duguay had fired his gun twice at the windshield.

According to the defendant, the victims had screamed and there was "a lot of blood" in the car. After the victims fled, he and Duguay searched the car for valuables and money. Either Duguay or the defendant then put papers into the abandoned car's gas tank and attempted to light it on fire, to destroy any fingerprints on the car. The defendant asked Pickering if he was interested in joining a group Duguay "wanted to put together" to commit robberies. Pickering noted that the defendant did not seem nervous, agitated, afraid, or angry as he recounted these events.

At the crime scene, police officers found papers scattered in and about the car, apparently having been removed from the glove compartment. The gas cap was off and burnt paper jutted from the tank. An unopened, cool beer can stood on the ground approximately eighty feet from the car. Laboratory analysis revealed the defendant's fingerprints on the can. Sixty-nine feet from the car, the police found two shell casings; ballistics testing revealed that the shells were fired from a telescopic rifle found in Duguay's home.

The police also discovered footprints around the crime scene, including an impression of a Nike sneaker tread. The footprint matched the tread of a Nike sneaker recovered from the defendant's house. At various points on the road providing access to the crime scene, the police found similar footprints both approaching and leaving the area. The police found footprints from a waffle-tread sneaker alongside the Nike footprints; these matched the tread of a sneaker seized from Duguay's residence.

Two days after the Garvins Falls shootings, Pembroke police officers interviewed the defendant in connection with another shooting incident. According to testimony adduced at trial, that incident occurred in the evening on June 15, 1994, when the defendant and Duguay came upon a group of individuals at a place along the Soucook River known as the "Ledges." One member of the group, Tammy D'Amore, accused the defendant and Duguay of taking her car keys. Duguay responded by pointing a gun at D'Amore. The defendant stood by Duguay, who fired the weapon in the air. Duguay proceeded to point the weapon at other members of the group; eventually he allowed them to leave. The defendant admitted to the Pembroke police that he was with Duguay that night and that Duguay fired a gun in the presence of several others.

Pembroke and Concord police also questioned the defendant about his activities on the night of June 17. The defendant initially claimed he was at home and had not seen Duguay. He eventually admitted, however, that he was with Duguay on the night of the Garvins Falls shootings, that he and Duguay were in the woods near Garvins Falls,

and that shots had been fired. The defendant insisted, however, that he did not participate in the shootings and was merely present a considerable distance from Duguay when the shots were fired. He claimed that he had not known Duguay had a rifle.

At the close of the State's case, the defendant moved to dismiss, arguing that the State had presented only circumstantial evidence from which no rational jury could conclude "that the defendant, beyond a reasonable doubt, committed the crime of attempted murder, of accomplice to attempted murder . . . , or [was] an accomplice to attempted arson or arson, or accomplice to attempted destruction of evidence or the destruction of evidence." The court denied the motion, and the jury subsequently found the defendant guilty as an accomplice on all counts. On appeal, the defendant acknowledges that the State proved he aided Duguay, but he maintains that the State failed to present sufficient evidence that he acted with the intent to facilitate the commission of attempted murder, attempted arson, or attempted falsification of physical evidence.

Under our Criminal Code, a person may be legally accountable for the conduct of another person if "[h]e is an accomplice of such other person in the commission of [an] offense." RSA 626:8, II(c). A person is an accomplice in the commission of an offense if, "[w]ith the purpose of promoting or facilitating the commission of [an] offense, he . . . aids or agrees or attempts to aid such other person in planning or committing it." RSA 626:8, III(a). In regard to the substantive offense that the State has the burden of establishing against an accomplice, the statute provides that "[w]hen causing a particular result is an element of the offense," the accomplice must act "with the kind of culpability, if any, with respect to that result that is sufficient for the commission of the offense." RSA 626:8, IV.

█ The question in this case is whether, based upon all the evidence and the reasonable inferences to be drawn therefrom, viewed most favorably to the State, any rational trier of fact could have found beyond a reasonable doubt, *see State v. Arillo*, 131 N.H. 295, 297, 553 A.2d 281, 282 (1988), that the defendant acted with the specific purpose to facilitate commission of the charged offenses. *See State v. Goodwin*, 118 N.H. 862, 866, 395 A.2d 1234, 1236 (1978); *State v. Bacon*, 658 A.2d 54, 61 (Vt.), *cert. denied*, 116 S. Ct. 117 (1995). "Because persons rarely explain to others the inner workings of their minds or mental processes, [a] culpable mental state must, in most cases, as here, be proven by circumstantial evidence." *State v. Sharon*, 136 N.H. 764, 765-66, 622 A.2d 840, 842 (1993).

When the State relies upon circumstantial evidence to prove an element of the charged offense, "such evidence must exclude all rational conclusions except guilt." *Id.* at 766, 622 A.2d at 842.

Considering the evidence and the inferences to be drawn therefrom most favorably to the State, a rational jury could conclude that the charged crimes were accomplished through the joint efforts and mutual encouragement of the defendant and Duguay, and that the defendant acted with the intent to aid in the shootings, attempted arson, and attempted falsification of evidence. In regard to the attempted murders, Pickering testified that mere hours after the incident, the defendant admitted that he had accompanied Duguay to Garvins Falls, and that they had planned to rob whomever they discovered there, by violent means if necessary. The defendant further told Pickering that once at Garvins Falls, he and Duguay hid behind a bush while Duguay twice shot at a car, and that after the victims abandoned the car they searched it for valuables and money.

The physical evidence also supports the jury's conclusion that the defendant acted with the requisite intent. The evidence discovered by the police placed the defendant at the scene: his fingerprints were on a full beer can left near the car, and footprints at the scene matched the tread of the defendant's sneakers. This evidence refuted the defendant's dissembling to the police about his proximity to the crime scene, while the size of the gun identified in the shootings — a rifle with a telescopic sight — refuted the defendant's questionable claim that he had not known Duguay had a gun; this claim was also refuted by the defendant's statement to Pickering that he and Duguay intended to rob victims by shooting them. The jury could infer a culpable mental state from the defendant's attempts to deceive the police. *See State v. Murray,* 129 N.H. 645, 650-51, 531 A.2d 323, 327 (1987). The jury could also infer the defendant's intent from his failure to disengage himself from Duguay either after the first shot was fired or after the victims screamed for help and fled the scene; indeed, the defendant's demeanor when he later spoke with Pickering betrayed no regret for his involvement in these events.

As for the charges that the defendant aided in the attempted arson and attempted falsification of evidence, Pickering testified that the defendant admitted that there was an attempt to destroy the car following the search for valuables and, again, offered no indication that he sought to disengage himself from Duguay while

this conduct occurred. When considered together with the other evidence presented, the jury could rationally conclude that the defendant was not merely an innocent bystander to attempted arson and attempted falsification of evidence.

■ It is true that "[m]ere presence at the scene of a crime is insufficient to make a person criminally responsible." *Goodwin*, 118 N.H. at 866, 395 A.2d at 1236. But "presence can be enough to prove complicity if the presence is intended to, and does, aid the primary actor," *id.*, and the evidence in this case reveals more than simply the defendant's presence at the scene. At a minimum, given their relationship, the defendant's accompanying Duguay to Garvins Falls may be viewed as suggesting encouragement. *See State v. Gervais*, 394 A.2d 1183, 1185 (Me. 1978). When combined with the defendant's admissions to Pickering, his dissembling to the police about his exact location in relation to the crime scene and whether Duguay had a gun, and his failure to disengage himself from Duguay following the shootings, search of the car, and attempted destruction of the car, his presence warrants an inference "beyond a reasonable doubt that he sought thereby to make the crime[s] succeed." *Goodwin*, 118 N.H. at 866, 395 A.2d at 1236 (quotation omitted). The trial court did not err in denying the motion to dismiss.

*Affirmed.*

All concurred.