Rockingham
No. 96-786

THE STATE OF NEW HAMPSHIRE

v.

KEVIN MERRITT

July 8, 1999

*Philip T. McLaughlin*, attorney general (*John C. Kissinger*, assistant attorney general), by brief, for the State.

*Gary Apfel*, assistant appellate defender, of Orford, by brief, for the defendant.

*Kevin Merritt*, by brief, *pro se*.

BRODERICK, J. After a jury trial in Superior Court (*Murphy*, J.), the defendant, Kevin Merritt, was found guilty on four counts of acting in concert with another on the fraudulent use of credit cards, RSA 638:5 (1996). On appeal, he argues that the evidence was insufficient to sustain his convictions. He also raises claims of prosecutorial misconduct and ineffective assistance of counsel. We affirm in part, reverse in part, and remand for resentencing.

I

Because the defendant challenges the sufficiency of the evidence, we examine the record in the light most favorable to the State. *See State v. Arillo*, 131 N.H. 295, 297, 553 A.2d 281, 282 (1988). In December 1995, the defendant and his girlfriend, Kelly Higgins, had been living together for eighteen months. Higgins was in dire financial straits and did not have any source of income. On December 18, 1995, they went shopping and Higgins made numerous, expensive purchases with credit cards belonging to Frances Driscoll and Marjorie Dannis.

That afternoon, at approximately 2:00 p.m., Driscoll noticed that her purse, which contained her Jordan Marsh and Visa credit cards, was missing. Driscoll was the only person authorized to use the cards. At 2:30 p.m., Higgins used Driscoll's Jordan Marsh card to buy jewelry at the store in the Fox Run Mall. Several days later, a sales clerk gave a written statement to the police that "[o]n 12/18, in the fine jewelry department in Jordan Marsh, [Higgins] was accompanied by [the defendant] and made a purchase using a credit card" belonging to Driscoll. There was no other evidence concerning the jewelry purchase.

Around 3:17 p.m. on December 18, after the defendant tried on clothes at American Eagle Outfitters in the mall, Higgins purchased men's pants and shirts with Driscoll's Visa card. The sales clerk testified that the defendant "was standing right next to [Higgins]" while the sale was taking place and that the defendant basically "did all the talking." Later that afternoon, the defendant and Higgins looked at a men's gold bracelet at Hannoush Jewelers in the mall. The sales clerk testified that she had "a long conversation" with the defendant about the bracelet and that they "went back and forth" over the price for twenty-five minutes. The defendant successfully negotiated a lower price, and Higgins bought the bracelet with the Visa card. Subsequently, Higgins and the defendant patronized Whitehall Jewelers, which is also located in the mall, and said they were interested in buying the defendant a gold bracelet. The sales clerk testified that she interacted principally with the defendant and that he was interested in negotiating a lower price. The clerk obtained the manager's approval to reduce the price, which made the defendant "very, very excited." He shook her hand "for helping him pick out such a real nice piece that he was very, very anxious to have." At 3:52 p.m., Higgins bought the bracelet with Driscoll's Visa card.

The defendant and Higgins then proceeded to Prelude Jewelers in downtown Portsmouth. The store owner testified that the defendant and Higgins had been in the store previously and admired a women's diamond ring. During the December 18 visit, the owner heard the defendant tell Higgins he wanted to buy her the ring but that he would need to use her credit card. At 4:53 p.m., Higgins again used Driscoll's Visa card and purchased the ring.

Around 5:30 p.m., a short distance from Prelude Jewelers, a man stole Marjorie Dannis' purse from her car. Her purse contained her Visa and Mastercard, which only she was authorized to use.

At 7:30 p.m., a male matching the defendant's description tried on a pair of men's work boots at J.C. Penney in the Fox Run Mall, and the woman with him purchased them with Dannis' Mastercard. At 7:44 p.m., the defendant and Higgins purchased a men's diamond ring from the store's jewelry department, with Higgins using Dannis' Mastercard. The sales clerk spoke mainly with the defendant. When the sale was completed, the clerk gave the defendant, who identified himself as "Kevin Johnson," a diamond certificate. At trial, the clerk explained that the individual named in the certificate was entitled to free diamond cleanings and to trade the diamond for one of greater value in the future. When Dannis' purse was later

recovered at a gas station in Portsmouth, it contained a torn diamond certificate and part of a receipt.

Based on this evidence, the defendant was indicted on four charges of fraudulent use of credit cards, alleging that he acted in concert with Higgins: the first count was for the Jordan Marsh jewelry; the second count was for the purchases at American Eagle, Hannoush Jewelers, and Whitehall Jewelers; the third count related to the ring purchased at Prelude Jewelers; and the fourth count identified the ring bought at J.C. Penney. The jury found the defendant guilty on all four counts, and this appeal followed.

## II

We first address the defendant's argument that the evidence was insufficient to sustain his convictions under New Hampshire law. *See State v. LaRose*, 127 N.H. 146, 153, 497 A.2d 1224, 1230-31 (1985). While the defendant is represented by appellate counsel, he also filed a *pro se* brief alleging that his convictions violated his rights under federal law. Because the Federal Constitution is not more favorable to the defendant than the State Constitution in this area, we do not engage in a separate federal analysis. *Cf. State v. Roach*, 141 N.H. 64, 65, 677 A.2d 157, 159 (1996).

The indictments alleged that the defendant "act[ed] in concert" with Higgins in the fraudulent use of the Driscoll and Dannis credit cards. The trial court instructed the jury that "acting in concert" meant accomplice liability. Under our Criminal Code, a person may be legally accountable for the conduct of another person if "[h]e is an accomplice of such other person in the commission of [an] offense." RSA 626:8, II(c) (1996). A person is an accomplice if, "[w]ith the purpose of promoting or facilitating the commission of [an] offense, he . . . aids or agrees or attempts to aid such other person in planning or committing it." RSA 626:8, III(a) (1996).

In reviewing the sufficiency of the evidence, "we must determine whether, based upon all the evidence and all reasonable inferences from it, when considered in a light most favorable to the State, any rational trier of fact could have found beyond a reasonable doubt that the defendant was a voluntary and active participant" in each of the fraudulent credit card transactions. *Arillo*, 131 N.H. at 297, 553 A.2d at 282.

The defendant first contends that no rational jury could have found him guilty as an accomplice for the Jordan Marsh jewelry purchase because he was merely present in the store and did not take affirmative steps to satisfy the *actus reus* requirement. We

agree. The crime of accomplice liability necessitates "some active participation by the accomplice." *Id.* (quotation omitted). Mere presence at the scene of a crime is insufficient. *State v. Goodwin,* 118 N.H. 862, 866, 395 A.2d 1234, 1236 (1978). The defendant's presence, however, can be sufficient if it was intended to, and does, aid the primary actor. *Id.* Thus, the defendant's presence may constitute aiding and abetting when it is shown to encourage the perpetrator or facilitate the perpetrator's unlawful deed. *Id.* Moreover, the circumstances surrounding the defendant's presence at the scene may warrant a jury inference beyond a reasonable doubt that he sought to make the crime succeed. *Id.*

The State relies on *State v. Laudarowicz,* 142 N.H. 1, 694 A.2d 980 (1997), to argue that the defendant's act of accompanying Higgins to Jordan Marsh, given the relationship between the two, was sufficient to constitute "encouragement" and trigger accomplice liability. *Laudarowicz,* however, is inapplicable because the defendant in that case conceded that he aided the principal and challenged only the evidence of his intent. *See id.* at 4, 694 A.2d at 983. Moreover, we relied upon substantial evidence other than the defendant's presence at the scene to support his convictions. *See id.* at 5-6, 694 A.2d at 983-84. Here, there is no evidence that the defendant did anything other than accompany Higgins to the Jordan Marsh store. The record does not indicate where the defendant was when the jewelry was purchased, nor does it reflect that he did or said anything which could be construed as aiding Higgins. *Cf. State v. Vaillancourt,* 122 N.H. 1153, 1155, 453 A.2d 1327, 1328 (1982) (indictment alleging that defendant aided another person "by accompanying him to the location of the crime and watching" insufficient to constitute "aid" as accomplice).

█ The State also relies on evidence of the defendant's other conduct on the day in question to support the inference that he engaged in similar conduct at Jordan Marsh. Assuming that the defendant's subsequent conduct might be relevant to his intent, *cf.* N.H. R. EV. 404(b), we conclude that the State failed to present sufficient facts to satisfy the *actus reus* element of accomplice liability. Accordingly, we reverse the defendant's conviction with respect to count one.

The defendant next contends that no rational jury could have found him guilty as an accomplice for the remaining transactions because he did not participate in them. He asserts no *actus reus* was proven, and because he did not know Higgins' use of the credit cards was unauthorized, no *mens rea* was established either. We disagree.

With respect to *actus reus*, the jury could have found that the defendant aided Higgins in these other transactions. In each transaction, the defendant dominated the exchange with the sales clerk, especially at the moment the sale was completed. Moreover, the defendant selected, or assisted Higgins in selecting, the merchandise that was ultimately purchased. Although the evidence shows that the defendant did not present the cards or sign any of the credit card slips, we are satisfied that the jury could have found he aided Higgins in committing fraud by picking out the merchandise and distracting the sales clerks from closely examining the credit cards while the merchandise was being purchased.

With respect to *mens rea*, we conclude that the jury could have found the defendant knew Higgins' use of the credit cards was unauthorized. Because the evidence of the defendant's state of mind is circumstantial, the State has the burden of proving beyond a reasonable doubt that the evidence excludes all rational conclusions except guilt. *Laudarowicz*, 142 N.H. at 4-5, 694 A.2d at 983. We "consider the evidence in the light most favorable to the State, and we examine each evidentiary item in the context of all the evidence, not in isolation." *State v. Duguay*, 142 N.H. 221, 225, 698 A.2d 5, 8 (1997) (quotation omitted).

The defendant argues that a reasonable jury could not have excluded all rational conclusions except guilt with respect to his intent. For example, he claims that it would be reasonable to conclude that Higgins had the credit cards from an earlier time when she was in better financial condition, or that she had obtained the credit cards from companies which offer credit cards to credit-poor individuals. The defendant also argues that a rational jury could have concluded that he and Higgins had been shopping for the holidays, which could explain the numerous purchases and the fact that he used the name "Kevin Johnson," a possible gift recipient, on the diamond certificate. The State responds that the defendant's arguments are speculative because no evidence was presented to the jury to support these possible explanations. We agree.

No evidence in the record, circumstantial or otherwise, supports the defendant's innocent explanations. For example, the defendant argues that the fact that he used the name "Kevin Johnson" on the diamond certificate is consistent with his assertion that he and Higgins were holiday shopping. The defendant, however, identified *himself* as "Kevin Johnson" and nothing in the record indicates that the men's diamond ring purchase could have been for

someone else. During trial, the defendant did not testify and merely raised the possibility when cross-examining the sales clerk that he could have bought the diamond ring for a friend. A mere possibility, however, unsupported by evidence in the record, is not sufficient to establish that the State has not eliminated all rational inferences except guilt. *Cf. State v. Coolidge*, 109 N.H. 403, 424-25, 260 A.2d 547, 562-63 (1969), *rev'd on other grounds*, 403 U.S. 443 (1971) (jury not allowed to base verdict on speculation).

■ Furthermore, we conclude that a rational jury could have reasonably decided, viewing the totality of the evidence in the State's favor, that all rational inferences other than guilt had been excluded beyond a reasonable doubt. The defendant and Higgins had a relationship and were living together. Moreover, the credit cards were used six times in six stores, over a period of about five and a quarter hours, for merchandise totaling over $2,600. In addition, jewelry and clothes purchased fit the defendant or were items the defendant expressed an intent to give to Higgins. Finally, the defendant gave a false name on the diamond certificate that accompanied the purchase of a men's diamond ring. *Cf. Duguay*, 142 N.H. at 226, 698 A.2d at 8 (jury can infer a culpable mental state from defendant's efforts to deceive police).

To support his claims of insufficiency, the defendant argues that the theft of Driscoll's purse and the discovery of Dannis' abandoned purse with the diamond certificate and receipt are not evidence that he had any involvement in the matters because there was no evidence as to who stole Driscoll's purse or who stole and later abandoned Dannis' purse. Given the short time frame between the thefts and the use of the credit cards, however, these facts could be considered by the jury in determining whether the defendant was involved in the subsequent use of Driscoll's and Dannis' credit cards. Moreover, even without the testimony about the thefts, the evidence was sufficient. Accordingly, we affirm the defendant's convictions with respect to the remaining counts.

### III

We next address the defendant's argument that the prosecutor engaged in misconduct during the trial, denying him due process of law under the Federal Constitution. The defendant contends that the State's submission of evidence concerning the theft of the purses and the contents of Dannis' purse, as well as statements made during the State's closing argument, constitute prosecutorial misconduct.

During trial, defense counsel made three objections. The first two challenged the relevance of the testimony of a prosecution witness, and the third contested conclusions drawn by a lay witness. None of these objections, however, asserted prosecutorial misconduct or a denial of due process, and therefore those issues are waived. *See State v. Sullivan*, 142 N.H. 399, 403-04, 702 A.2d 339, 342 (1997).

During the State's closing argument, the prosecutor asserted:

> It's almost hard to imagine taking somebody else's credit cards, specifically the elderly women that you saw testify, it's almost unfathomable for us to imagine taking cards from a woman like that and then utilizing them in making purchases of particular merchandise. How would you act if they were to walk into a place like that . . . .

Defense counsel interrupted and asked to approach the bench. Her objection, however, was recorded as "unintelligible." Thereafter, the record only reflects the court's passing comment "I don't think so. I—I don't read that" and defense counsel's response "Okay." In his *pro se* brief, the defendant characterizes his counsel's objection as challenging the prosecution's improper inference that the defendant stole the purses and the credit cards. Even assuming that this specific objection was made, we conclude that the prosecutor's statement was not improper. *See State v. Bujnowski*, 130 N.H. 1, 4, 532 A.2d 1385, 1386 (1987) (impropriety of statement part of prosecutorial misconduct claim).

■ Evidence had been admitted, without objection, regarding the theft of the purses and the contents of Dannis' purse. Therefore, the State was commenting on evidence that was already before the jury. *Cf. State v. Lake*, 125 N.H. 820, 822, 485 A.2d 1048, 1051 (1984) (prosecutor may not argue facts not in evidence). Moreover, inviting the jury to infer that the defendant stole the purses was not unreasonable given the short time frame between the thefts and the use of the credit cards. *Cf. State v. Sylvia*, 136 N.H. 428, 431, 616 A.2d 507, 509 (1992) (prosecutor may draw reasonable inferences from facts proven and has great latitude in closing argument to summarize and discuss evidence presented to jury and to urge jury to draw inferences of guilt from evidence). Accordingly, we hold that the prosecutor's statement was not improper, and thus did not constitute prosecutorial misconduct. *See State v. Taylor*, 139 N.H. 96, 101, 649 A.2d 375, 378 (1994).

## IV

Finally, we address the defendant's claims of ineffective assistance of trial and appellate counsel. We decline to review these claims at this juncture because the defendant has not yet raised these issues in the superior court, *see, e.g., Petition of Dean*, 142 N.H. 889, 890, 711 A.2d 257, 258 (1998) (motion for a new trial); *Humphrey v. Cunningham, Warden*, 133 N.H. 727, 732-33, 584 A.2d 763, 766-67 (1990) (petition for a writ of habeas corpus).

Accordingly, we reverse the defendant's conviction on the first count and affirm his convictions on the three remaining counts. We remand for resentencing because evidence of the unlawful conviction may have affected the sentences imposed.

*Affirmed in part; reversed in part; remanded.*

All concurred.