Hillsborough
No. 90-130

## THE STATE OF NEW HAMPSHIRE

### v.

### DANIEL BUREAU

May 3, 1991

*John P. Arnold*, attorney general (*Ann M. Rice*, attorney, on the brief and orally), for the State.

*James E. Duggan*, chief appellate defender, of Concord, by brief and orally, for the defendant.

BATCHELDER, J.   The defendant, Daniel Bureau, was convicted after a jury trial in Superior Court (*M. Flynn*, J.) on four counts of aggravated felonious sexual assault, RSA 632-A:2, III. Challenging his conviction, the defendant argues that it was improper for the prosecutor to vouch for the victim's credibility through statements made to the jury during closing argument. We affirm.

In the early morning hours of July 2, 1988, the male victim, who suffers from a medical condition that adversely affects his equilibrium, limits his ability to run, causes him to walk with a crouched gait, and causes weakness in his legs and right arm, went to the Manchester police station and reported that he had been raped. He described the following sordid details of his encounter with the assailant. He stated that his assailant had threatened him and taken him to the rear of the Amoskeag Bank. There, the assailant forced the victim to perform fellatio, subjected the victim to fellatio, inserted his finger into the victim's rectum causing him to defecate, and inserted twigs into the victim's penis.

After giving his initial statement to the police, the victim was sent to the Elliot Hospital to be examined. The attending physician found fresh scratches on the victim's buttocks and leg, dried feces on his buttocks and one knee, tenderness of his scrotum, and tenderness on the left side of his head. There were no apparent signs of trauma to the victim's anus or penis.

That evening the victim returned to the Manchester police station, where he was shown a photo array, which evidently did not include a picture of the defendant. He did not identify any of the persons shown as his assailant. Three days later, the victim was shown a second photo array, which apparently contained photos different from the first array. From that array, the victim picked a photo of the defendant, but said that he could not be positive in his identification. Two days after viewing the second array, the victim was shown a totally different third photo array, which contained a picture of the defendant taken the previous day. The victim immediately pointed to the picture of the defendant and in an excited voice stated, "That's the bastard." The victim also said that he was "a hundred percent sure" that was the person who had assaulted him. At trial, the victim identified the defendant as his assailant.

In his closing argument, the prosecutor commented on the victim's credibility:

> "How could somebody put twigs up inside somebody's penis? The fact of the matter is if someone is lieing [sic], how could they come up with that lie? There's no reason in the world. The only reason he's saying that is because *it's the truth*, and Mr. Bureau did it to him for whatever wild reason, and that makes Mr. Bureau guilty . . . . You're going to ask yourselves how could he possibly come in here and go through the living hell he must have had to unless he—the only reason he could do that is because he had been through a hell at the Amoskeag Bank and for that reason Mr. Bureau, and nobody else in the world, despite all of the experience and the cross examination and all of the talents that [the defense attorney] brought in, Mr. Bureau is guilty. *That's the truth* and that's the challenge."

(Emphasis added.) Following closing arguments, defense counsel objected to the prosecutor's comments on the ground that the prosecutor had impermissibly vouched for the victim's credibility. No curative instruction was requested, and the objection was overruled.

A lawyer must not, "in trial, . . . state a personal opinion as to . . . the credibility of a witness." N.H. RULE OF PROFESSIONAL CONDUCT 3.4(e). Consequently, the defendant argues that it was improper for the prosecutor to refer to the victim's testimony as "the truth," thus expressing an opinion as to the victim's credibility. He maintains that the potential for prejudice was enhanced by the prosecutor's suggestion that the jury consider the effect of defense coun-

sel's expertise in cross-examination when weighing the credibility of the victim's testimony. He further asserts, for the first time on appeal, that the lack of a curative instruction requires a new trial, even though he did not seek such an instruction, either during or at the close of the prosecutor's argument.

■■ "In order for the court to find 'prosecutorial overreaching, the government must have, through gross negligence or intentional misconduct, caused aggravated circumstances to develop which seriously prejudiced a defendant, causing [the defendant] reasonably to conclude that continuation of the tainted proceeding would result in his conviction.'" *State v. Bujnowski*, 130 N.H. 1, 4, 532 A.2d 1385, 1386 (1987) (quoting *State v. Lake*, 125 N.H. 820, 823, 485 A.2d 1048, 1051 (1984)). However, an improper comment made by the prosecutor does not, in every case, constitute prosecutorial overreaching requiring a new trial. *State v. Lake*, 125 N.H. at 823, 485 A.2d at 1050.

The defendant relies upon *State v. Bujnowski supra* to support his argument that the prosecutor's statements amounted to impermissible vouching. However, his reliance on *Bujnowski* is misplaced. In that case, the prosecutor prefaced his comments on the witness's veracity with "I think . . .," *Bujnowski*, 130 N.H. at 3, 532 A.2d at 1386, and "continued to present his personal opinions even after the trial court told him that his statements were improper." *Id.* at 6, 532 A.2d at 1387. This court specifically noted that,

> "We do not decide whether the prosecutor's initial misconduct was sufficient to cause prejudice to the defendant. *Though the prosecutor's initial misconduct may or may not have been enough to require reversal,* we are here faced with a different situation. In this case such intentional, repetitive misconduct may well have rendered the court's curative instructions meaningless."

*Id.* at 6, 532 A.2d at 1387–88 (emphasis added).

The key factor in our decision in *Bujnowski* was the prosecutor's *continued* statements of personal opinion after the trial court had told him that his statements were improper. The prosecutor's *intentional* misconduct in that case prompted the reversal of the defendant's conviction. In this case, there is no evidence of repetitive instances of intentional misconduct in the prosecutor's closing argument. Thus, *Bujnowski* is distinguishable on its facts and does not control here.

The defendant overlooks the distinction between a proper credibility argument, based on the evidence in the record, and personal vouching for the witness's credibility. While the "prosecutor may not vouch for the credibility of witnesses based on facts personally known to the prosecutor but not introduced at trial, that does not mean the prosecutor cannot argue that the fair inference from the facts presented is that a witness has no reason to lie." *United States v. Bright*, 630 F.2d 804, 824 (5th Cir. 1980) (citations omitted). Defense counsel, during closing argument, continually attacked the victim's credibility by stating that the victim's testimony "just [didn't] make sense." In response, the prosecutor was entitled to argue fairly to the jury that the victim's testimony *was* credible. The prosecutor was arguing that the defendant's conduct, testified to by the victim, was so bizarre as to diminish the likelihood that the testimony could be the product of fabrication. In the context of closing argument, a prosecutor may "draw[ ] reasonable inferences from the evidence which [do] not exceed the bounds of legitimate advocacy." *State v. Breest*, 116 N.H. 734, 750, 367 A.2d 1320, 1333 (1976) (citing *State v. Bacon*, 114 N.H. 306, 310, 319 A.2d 636, 640 (1974)).

The defendant asserts that the potential for prejudice was enhanced, because there was no curative instruction given when the remarks came before the jury. There was no impropriety in the prosecutor's closing argument; hence no curative instruction was required. The defendant further claims error because the prosecutor suggested that the jury consider the effect of defense counsel's expertise in cross-examination when weighing the credibility of the victim's testimony. Because we hold that the prosecutor's remarks were not improper, we need not address the subsidiary arguments raised by the defendant. *State v. Elliott*, 133 N.H. 759, 767, 585 A.2d 304, 309 (1990). Accordingly, we affirm the decision of the trial court.

*Affirmed.*

All concurred.