Hillsborough
No. 91-103

THE STATE OF NEW HAMPSHIRE

v.

FRANKLIN J. SYLVIA

November 25, 1992

*John P. Arnold*, attorney general (*Donald Feith*, senior assistant attorney general, on the brief and orally), for the State.

*James E. Duggan*, chief appellate defender, of Concord, by brief for the defendant.

*Frank J. Sylvia*, by brief and orally, *pro se*.

BROCK, C.J.   The defendant was convicted after a jury trial in Superior Court (*Goode*, J.) of three counts of theft by unauthorized taking, RSA 637:3. On appeal the defendant argues that the trial court erred: (1) when it refused to give a curative instruction after the prosecutor misstated the evidence in closing argument; and (2) when it ruled that evidence of acute alcohol dependence could not be introduced to prove a lack of specific intent to commit theft. We affirm.

The defendant was an attorney practicing in Hillsborough until his disbarment in 1988. As part of his law practice, he served as the administrator of the estate of Frank Colburn, the trustee of the guardianship account for Melissa Lougee, and the executor of the estate of Elizabeth Nutting. In 1990, the defendant was indicted on six counts of theft, and the State proceeded to trial on three of the counts.

Count I of the indictment charged that the defendant, as administrator of the Colburn estate, obtained $44,664.76 as proceeds from the sale of Colburn's real estate and spent $34,767.16 of that amount on matters unrelated to the estate. At trial, the State presented evidence that the defendant wrote a series of checks against the $44,664.76 for various expenses, including a $9,000 check to his personal account to make payments on a construction loan on his own property. In addition, the defendant used the funds to pay claims of his other clients.

Count II of the indictment charged that the defendant, as trustee and guardian to Melissa Lougee, exercised unauthorized control over $14,000 in her guardianship account. The evidence showed that the defendant used funds from the guardianship account to pay expenses unrelated to the trust, including painting, electrical work, landscaping, plumbing, and real estate loans related to his own property.

Count V charged that the defendant, as executor of the Nutting estate, transferred $12,542.07 from Nutting's savings account to his law firm's trust account, and used the funds for expenses unrelated to the Nutting estate. The evidence showed that on May 26, 1986, the

defendant paid $12,542.07 from the account to one Ellen Gibson as the proceeds from the October 1985 sale of her house.

At trial, the defendant admitted to writing the checks but denied intending to steal his clients' funds. He stated that he was unaware of the prohibitions set forth in the Code of Professional Conduct concerning use and commingling of client funds and argued that his purpose was to invest the money on his clients' behalf. The defendant testified that he viewed the money "like a mutual fund" where all the money is combined and invested. The defendant also sought to introduce evidence at trial that his acute alcohol dependence caused him to rationalize that his actions were in the best interests of his clients and that he thereby had no intent to deprive them of their money. Finally, the defendant asserted that he was not guilty by reason of insanity based on his alcoholism. Given the choices of guilty, not guilty, and not guilty by reason of insanity, the jury found the defendant guilty on all three counts.

The defendant first argues on appeal that the trial court erred when it refused to give a curative instruction after the prosecutor made what the defendant asserts were misstatements during closing argument. According to the defendant, on "[a]t least four" occasions during closing argument the State "expressed to the jury a completely erroneous misstatement of the law . . . contrary to testimony from [the State's expert witness]." During the trial, the State's expert in estate administration testified that an estate inventory should list, *inter alia*, the balance of the decedent's savings accounts as of the date of death, and should establish the beginning balance for the ultimate account filed with the probate court. As part of the State's closing argument, the prosecutor reviewed in detail each theft committed by the defendant. The prosecutor argued that by the time the defendant filed inventories with the probate court indicating the contents of the Colburn and Nutting estates, he had already misappropriated money contained in those estates' savings accounts.

The defendant objected on the grounds that while the State's expert had testified that the inventory must show the value as of the date of death, the prosecutor "more than implied" that the inventories must show the value of the estate at the time of filing. The defendant contends that the prosecutor thereby affirmatively misstated the evidence with respect to inventories filed by the defendant with the probate court, and in doing so asked the jury to believe that he had deliberately lied to the court. According to the defendant, such was clearly prosecutorial misconduct, and, because

the trial court refused to give a requested curative instruction, he must be given a new trial.

A prosecutor may draw reasonable inferences from the facts proven, *see State v. Glidden*, 122 N.H. 41, 48, 441 A.2d 728, 732 (1982), and has great latitude in closing argument to both "summarize and discuss the evidence presented to the jury and to urge the jury to draw inferences of guilt from the evidence." *State v. Grote*, 127 N.H. 748, 751, 506 A.2d 346, 348 (1986). To constitute prosecutorial overreaching, "the government must have, through gross negligence or intentional misconduct, caused aggravated circumstances to develop which seriously prejudiced a defendant, causing him reasonably to conclude that continuation of the tainted proceeding would result in his conviction." *State v. Lake*, 125 N.H. 820, 823, 485 A.2d 1048, 1051 (1984). We do not agree that the statements in this case are of the kind found improper in the numerous cases cited by the defendant. *See, e.g., State v. Bujnowski*, 130 N.H. 1, 532 A.2d 1385 (1987) (prosecutor professed to jury his personal opinion of the guilt of the defendant); *State v. Preston*, 121 N.H. 147, 427 A.2d 21 (1981) (prosecutor argued to jury facts not in evidence); *State v. LaBranche*, 118 N.H. 176, 385 A.2d 108 (1978) (State testified about untried indictment pending against defendant).

The prosecutor argued that the defendant's inventory filings with the probate court did not reflect that the defendant had already spent a portion of the funds received. This was not a "misstatement" of the expert's testimony, as the expert neither testified as to the accuracy of the defendant's filings with the probate court, nor to whether an inventory filed with the probate court should reflect adjustments made to a decedent's bank accounts between the date of death and the filing date of the inventory. Rather, the prosecutor drew a reasonable inference from the evidence as a whole that the defendant knew that what he was doing with his clients' funds was illegal. Because the prosecutor did not misstate the evidence, there was no impropriety in the closing argument, and no curative instruction was required. *See State v. Bureau*, 134 N.H. 220, 224, 589 A.2d 1013, 1016 (1991).

The defendant next argues that the trial court erred in ruling that evidence of the effects of his acute alcohol dependence was limited to an insanity defense, and could not be used to prove lack of specific intent to commit theft. Prior to trial the defendant gave notice that he intended to rely on the defense of intoxication under RSA 626:4. The notice stated:

"1. During the events alleged in the indictment, the defendant was suffering from acute alcohol dependence, which had a devastating impact on his personal and professional life over a period of at least 10 years.

2. That alcohol dependence, particularly as it affected his cognitive functioning and his ability to function effectively as a professional, had a decided affect [sic] on his judgment. Due to that alcohol dependence and the progression of that illness over the period of 10 years, the defendant was unable to perform [sic] the necessary prerequisite criminal intent to misappropriate his client's funds as alleged in the indictment."

Relying on State v. Plummer, 117 N.H. 320, 374 A.2d 431 (1977), and State v. Glidden, 127 N.H. 359, 499 A.2d 1349 (1985), the State moved to bar testimony about the effect of the defendant's alcoholism on his ability generally to form a specific intent unless such testimony was offered in the context of an insanity defense. The trial court granted the State's motion and allowed the defendant to introduce expert testimony of his alcoholism only in connection with an insanity defense.

RSA 626:4 provides: "Intoxication is not, as such, a defense. The defendant may, however, introduce evidence of intoxication whenever it is relevant to negate an element of the offense charged, and it shall be taken into consideration in determining whether such element has been proved beyond a reasonable doubt." Based on this so-called "intoxication defense," the defendant argues that the trial court erred by excluding testimony of the effect of the defendant's alcoholism on his general ability to form the specific intent to steal. In doing so he fails to appreciate the distinction, articulated by this court in State v. Plummer, between intoxication and alcoholism.

As support for his argument, the defendant cites cases in which this court held that the jury may consider intoxication in deciding whether the defendant had the requisite intent to commit the alleged crime. See State v. Hamel, 123 N.H. 670, 679, 466 A.2d 555, 560 (1983); State v. Noel, 119 N.H. 522, 528, 404 A.2d 290, 293 (1979); State v. Goodwin, 118 N.H. 862, 867, 395 A.2d 1234, 1237 (1978); State v. Caldrain, 115 N.H. 390, 391–92, 342 A.2d 628, 629 (1975); State v. Warren, 114 N.H. 196, 197, 317 A.2d 566, 567 (1974). In each of these cases, however, the defendant raised the "intoxication defense" in the context that because the defendant was under the influence of drugs or alcohol at the time of the commission of the offense,

he was incapable of forming the requisite mental state. These cases illustrate the proper use of RSA 626:4.

Here, however, the defendant did not propose through his expert psychologist or any other witness to elicit testimony about his intoxication on the various occasions he committed the alleged thefts. Instead, the defendant offered expert testimony to demonstrate that because of his acute alcoholism, he was deprived of the ability to appreciate the criminality of his conduct. Such testimony had no bearing on whether he was so intoxicated as to be unable to form the specific intent to commit theft. Our holding in *Plummer* is quite clear: "[I]t is only when the defendant claims that his condition of chronic alcoholism constitutes a mental disease or insanity which renders him incapable of exercising his volition and thus constitutes a complete defense to an alleged criminal act that he will be allowed to present evidence of this condition." *Plummer*, 117 N.H. at 328, 374 A.2d at 436. Where, as here, the defense is based on the long term effects of alcoholism, then it is a defense of mental disease within the purview of the insanity statute.

*Affirmed.*

HORTON, J., did not sit; the others concurred.