# IN THE SUPREME COURT OF APPEALS OF WEST VIRGINIA

## January 2021 Term

No. 19-0326

FILED
**April 2, 2021**
released at 3:00 p.m.
EDYTHE NASH GAISER, CLERK
SUPREME COURT OF APPEALS
OF WEST VIRGINIA

STATE OF WEST VIRGINIA,
Plaintiff Below, Respondent

V.

KEVIN TRAVIS COSTELLO,
Defendant Below, Petitioner

_____

Appeal from the Circuit Court of Jefferson County
The Honorable David Hammer, Judge
Civil Action No. 18-F-15

AFFIRMED

_____

Submitted: February 9, 2021
Filed: April 2, 2021

Matthew Brummond
Justin M. Collin
Appellate Advocacy Division
Public Defender Services
Charleston, West Virginia
Attorney for the Petitioner

Patrick Morrisey
Attorney General
Andrea Nease Proper
Deputy Attorney General
Gordon L. Mowen, II
Assistant Attorney General
Charleston, West Virginia
Attorneys for the Respondent

CHIEF JUSTICE JENKINS delivered the Opinion of the Court.

**JUSTICE ARMSTEAD concurs in part and reserves the right to file a separate opinion.**

**JUSTICE WOOTON concurs in part and dissents in part and reserves the right to file a separate opinion.**

**SYLLABUS BY THE COURT**

1.     "The decision to declare a mistrial, discharge the jury, and order a new trial in a criminal case is a matter within the sound discretion of the trial court." Syllabus point 8, *State v. Davis*, 182 W. Va. 482, 388 S.E.2d 508 (1989).

2.     "The function of an appellate court when reviewing the sufficiency of the evidence to support a criminal conviction is to examine the evidence admitted at trial to determine whether such evidence, if believed, is sufficient to convince a reasonable person of the defendant's guilt beyond a reasonable doubt. Thus, the relevant inquiry is whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proved beyond a reasonable doubt." Syllabus point 1, *State v. Guthrie*, 194 W. Va. 657, 461 S.E.2d 163 (1995).

3.     "A criminal defendant challenging the sufficiency of the evidence to support a conviction takes on a heavy burden.  An appellate court must review all the evidence, whether direct or circumstantial, in the light most favorable to the prosecution and must credit all inferences and credibility assessments that the jury might have drawn in favor of the prosecution.  The evidence need not be inconsistent with every conclusion save that of guilt so long as the jury can find guilt beyond a reasonable doubt.  Credibility determinations are for a jury and not an appellate court.  Finally, a jury verdict should be set aside only when the record contains no evidence, regardless of how it is weighed, from

1

which the jury could find guilt beyond a reasonable doubt.   To the extent that our prior cases are inconsistent, they are expressly overruled."  Syllabus point 3, *State v. Guthrie*, 194 W. Va. 657, 461 S.E.2d 163 (1995).

4.      "When a criminal defendant undertakes a sufficiency challenge, all the evidence, direct and circumstantial, must be viewed from the prosecutor's coign of vantage, and the viewer must accept all reasonable inferences from it that are consistent with the verdict.  This rule requires the trial court judge to resolve all evidentiary conflicts and credibility questions in the prosecution's favor; moreover, as among competing inferences of which two or more are plausible, the judge must choose the inference that best fits the prosecution's theory of guilt."  Syllabus point 2, *State v. LaRock*, 196 W. Va. 294, 470 S.E.2d 613 (1996).

5.      For purposes of a recidivist proceeding, whether a conviction for a certain crime qualifies as a crime punishable by confinement in a penitentiary is a question of law for the court.

6.      "The appropriateness of a life recidivist sentence under our constitutional proportionality provision found in Article III, Section 5 [of the West Virginia Constitution], will be analyzed as follows: We give initial emphasis to the nature of the final offense which triggers the recidivist life sentence, although consideration is also given to the other underlying convictions.  The primary analysis of these offenses is to determine

11

if they involve actual or threatened violence to the person since crimes of this nature have traditionally carried the more serious penalties and therefore justify application of the recidivist statute." Syllabus Point 7, *State v. Beck*, 167 W.Va. 830, 831, 286 S.E.2d 234 (1981).

7.     "For purposes of a life recidivist conviction under West Virginia Code § 61-11-18(c), two of the three felony convictions considered must have involved either (1) actual violence, (2) a threat of violence, or (3) substantial impact upon the victim such that harm results.   If this threshold is not met, a life recidivist conviction is an unconstitutionally disproportionate punishment under Article III, Section 5 of the West Virginia Constitution." Syllabus point 12, *State v. Hoyle*, 242 W. Va. 599, 836 S.E.2d 817 (2019).

**Jenkins, Chief Justice:**

Petitioner Kevin Travis Costello ("Mr. Costello") was convicted on one count of DUI causing serious bodily injury. After the jury returned a guilty verdict, the State filed a recidivist information pursuant to the provisions of West Virginia Code section 61-11-18 (eff. 2000) and section 61-11-19 (eff. 1943) and this State's body of recidivist caselaw. The recidivist information alleged that Mr. Costello had previously been convicted of two prior felony offenses: (1) possession of heroin with intent to distribute in Maryland and (2) distribution of crack cocaine in the United States District Court for the Northern District of West Virginia. The jury convicted Mr. Costello as charged in the information. Thereafter, the circuit court sentenced him to life in prison, with mercy. This appeal followed.

In this appeal, Mr. Costello raises three issues.[1] First, he alleges that a mistrial should have been granted following the testimony of his probation officer because the officer testified to an undisclosed oral statement. Second, Mr. Costello contends that the State provided insufficient evidence of his prior Maryland conviction. Third, he argues that his life sentence is disproportionate.

---

[1] In his brief, Mr. Costello set forth four separate assignments of error: (1) The State violated the rules of discovery by introducing an undisclosed confession during trial; (2) The State presented insufficient evidence of Petitioner's Maryland conviction during the recidivist trial; (3) The trial court directed a verdict when it instructed the jury that Petitioner's prior convictions were felonies; and (4) Petitioner's life sentence is disproportionate. For clarity and brevity, Mr. Costello's assignments of error have been consolidated.

Having considered the briefs submitted on appeal, the appendix record, the parties' oral arguments, and the applicable legal authority, we find no error. Accordingly, for the reasons set forth below, Mr. Costello's conviction and sentence are affirmed.

## I.

## FACTUAL AND PROCEDURAL HISTORY

On July 24, 2017, while driving on U.S. 340 in Jefferson County, West Virginia, Mr. Costello passed out, crossed the center line into oncoming traffic, hit an embankment, and then crashed into an oncoming vehicle. A two-year-old child, who was riding in the back seat of the oncoming vehicle, was seriously and permanently injured. Following the crash, witnesses observed Mr. Costello to be disoriented and speaking incoherently. According to the witnesses, when Mr. Costello got out of his vehicle, he was shirtless, his eyes were "droopy," and "his words were kind of jumbled." Once the responding officers arrived on scene, Mr. Costello was noted to be "stumbling," "mumbling," and "staggering." When the officers explained to him how to perform the field sobriety test, "[t]here were several times he was standing up falling asleep." Mr. Costello consented to a breath test that showed he had no alcohol in his system; however, he refused to submit to a blood draw. Mr. Costello was arrested and, during subsequent sobriety testing, fell asleep forty-two times.

After his arrest, Mr. Costello met with his probation officer because his suspected criminal conduct violated a number of terms relating to his probation. At the

2

time of the crash, he had only recently been released from imprisonment and was on probation. During the meeting, Mr. Costello made the following written admissions to probation violations:

> 1) You did violate rule J of the rules and regulations governing your release on Probation in that on or about 07-24-17, you did use drugs to wit: Heroin;
>
> 2) You did violate rule [E] of the rules and regulations governing your release on Probation in that on or about 07-24-17, you did manifest behavior that threatened the safety of yourself or others, or that could result in your imprisonment; which caused you to be charged with DUI (narcotics) with felony serious bodily harm.

On January 16, 2018, Mr. Costello was indicted for DUI causing serious bodily harm. Prior to trial, Mr. Costello moved to exclude the written admissions on the ground that they were made during the course of a legal examination and were inadmissible. The circuit court disagreed with his reasoning and concluded that the admissions were voluntarily made as to his probation violations and were not the subject of a legal examination. The court further ruled that the first admission—that he used heroin—was admissible. However, the court ruled that Mr. Costello's admission to the second violation was inadmissible under West Virginia Rule of Evidence 403 because it "lack[ed] clarity and [was] ambiguously phrased in the disjunctive."

Mr. Costello's defense at trial was that he consumed the heroin after the accident occurred in order to dispose of the evidence. In contrast to Mr. Costello's theory,

his probation officer testified, without giving prior notice to the State, that Mr. Costello gave an oral confession during their above-mentioned meeting.  The probation officer testified that Mr. Costello confessed that he snorted heroin while driving home from work, blacked out, crashed into the victim's vehicle, and woke up sometime after the crash. Defense counsel did not object to the probation officer's testimony, and he did not move to strike it from the record of the proceedings.  Rather, at the conclusion of this testimony, defense counsel requested a sidebar and then moved for a mistrial on the basis that the State improperly elicited this testimony in violation of the trial court's pretrial ruling on the admission of certain documentary evidence.  The court denied the motion for a mistrial and stated:

> I don't detect that what this witness said was in any way the same as what that portion of that document said.  So I'm going to deny your motion . . . as I recall what was redacted was not in any way what this witness just testified to regarding the snorting heroin, crossing bridge, blacking out, and waking after the car was flipped over . . . .

Following the close of the State's case, Mr. Costello renewed his motion for a mistrial on the same grounds as his earlier motion—that is, that the officer's testimony violated the court's prior ruling that Mr. Costello's statement that he violated Part E of the rules governing his early release from prison was inadmissible. The trial court again denied the motion and stated:

> [The probation officer] testified that the defendant told him that he had ingested a substance, heroin, and that he recalls crossing the bridge and then the next thing he lost consciousness and

4

woke when his car was upside down. The statement that was redacted says, and I quote, "You did violate Rule E of the rules and regulations governing your release on probation and that on or about 7-24-17 you did manifest behavior that threatened the safety of yourself or others, or that could result in imprisonment; which caused you to be charged with DUI, narcotics with felony serious bodily harm." I don't see those as even close to identical statements.

After the motion for mistrial was denied, Mr. Costello testified in his own defense. He admitted that he made a confession to his probation officer but claimed that he had been untruthful in order to shorten his jail sanction for violating his probation. At the close of all the evidence, Mr. Costello once again moved for a mistrial and also moved for acquittal. These motions were denied.

The jury convicted him of one count of DUI causing serious bodily injury, as alleged in the indictment. Mr. Costello moved for a new trial and later filed a supplemental motion for a new trial. At a hearing on the motion, he argued that the State's failure to disclose his confession was error, and that, had the confession been properly disclosed, he would have "[a]ltered [his] trial strategy in significant ways if that information had been presented . . . before trial." Mr. Costello also argued that the circuit court should have held a pretrial hearing to determine if his confession was voluntary. The State countered that, during the prosecuting attorney's multiple conversations with Mr. Costello's probation officer prior to trial, he never once mentioned that he had given a full confession. The circuit court acknowledged that neither party was aware that the officer

would testify about Mr. Costello's confession and, indeed, he did not accuse the State of intentionally withholding this evidence.

The court ultimately denied Mr. Costello's motion for a new trial and concluded that its pretrial ruling excluding his written statement did not include the oral confession he made to his probation officer and that, in fact, the motion to suppress sought to suppress Mr. Costello's statements only and, thus, could not be construed to encompass the officer's testimony about the confession that he consumed heroin before the accident. Regarding the voluntariness of the confession, the circuit court determined that no hearing was required because Mr. Costello failed to argue that the confession was involuntary.

In its order denying the motion for a new trial, the circuit court found that, "[a]t trial, [Mr.] Costello did not object to the admissibility of his oral confession based upon voluntariness, did not request a hearing on voluntariness, nor did [Mr.] Costello request any exclusion of the oral confession based on nondisclosure by the State prior to trial." Further, the court found that Mr. Costello

> should have informed his attorney about his oral confession before trial so counsel 1) could have attempted to suppress his oral confession pretrial; and/or 2) been prepared at trial to address the confession through objections, motions, cross-examinations, proposed jury instructions, and associated argument. Any error resulting from such recalcitrance is one of defendant's own making.

6

Finally, the circuit court determined that even if Mr. Costello's "confession was involuntary and improperly admitted, the error was harmless beyond a reasonable doubt." Among other things, the circuit court noted that the evidence at trial included recorded jailhouse calls between (1) Mr. Costello and his mother and (2) Mr. Costello and his fiancée which, "even without [the probation officer's] testimony would, beyond a reasonable doubt, have resulted in [Mr.] Costello's conviction[.]"

The State thereafter filed a recidivist information in which it alleged that Mr. Costello previously had been convicted of two felony offenses: (1) possession of heroin with intent to distribute in Frederick County, Maryland, on May 14, 2012, and (2) distribution of crack cocaine in the United States District Court for the Northern District of West Virginia, on September 5, 2000. The jury convicted Mr. Costello as charged in the information. The circuit court sentenced him to life in prison, with mercy. This appeal followed.

## II.

## STANDARD OF REVIEW

Because Mr. Costello alleges multiple assignments of error to which we apply different standards of review, we set out each particular standard of review in connection with our discussion of each assigned error.

# III.

# DISCUSSION

In the case *sub judice*, Mr. Costello raises several alleged errors. First, he alleges that a mistrial should have been granted following the testimony of his probation officer because the officer testified to an undisclosed oral statement. Second, Mr. Costello contends that the State failed to prove his prior Maryland conviction beyond a reasonable doubt. In connection with his challenges to the sufficiency of the evidence, Mr. Costello also alleges that it was error for the trial court to rule, as a matter of law, that his prior convictions were felonies. Lastly, he argues that his life sentence under the recidivist statute, West Virginia Code section 61-11-18(c), is constitutionally disproportionate. We address each of these arguments in turn.

## *A. Denial of Motion for Mistrial*

Mr. Costello alleges that the trial court erred in denying his motions for mistrial. Specifically, he argues that the trial court should have granted the motions for mistrial because the probation officer's undisclosed testimony at trial was an undue surprise that hampered the preparation and presentation of his case. We review this alleged error under an abuse of discretion standard. "The decision to declare a mistrial, discharge the jury, and order a new trial in a criminal case is a matter within the sound discretion of the trial court." Syl. pt. 8, *State v. Davis*, 182 W. Va. 482, 388 S.E.2d 508 (1989). *Accord*

8

*State v. Lowery*, 222 W. Va. 284, 288, 664 S.E.2d 169, 173 (2008) ("The decision to grant

or deny a motion for mistrial is reviewed under an abuse of discretion standard.").

**1.     Discovery Violation.** According to Mr. Costello, pursuant to Rule

16[2] of the West Virginia Rules of Criminal Procedure, the State was required to disclose

the probation officer's proposed testimony—regarding Mr. Costello's oral confession—

prior to trial in its disclosure. Mr. Costello contends that he had a right to rely upon his

discovery requests and the absence of a confession in the State's discovery responses and

disclosures. Mr. Costello further argues that because the probation officer's testimony was

---

[2] Rule 16 of the West Virginia Rules of Criminal Procedure states, in pertinent part:

> Upon request of a defendant the state must disclose to the defendant and make available for inspection, copying, or photographing: any relevant written or recorded statements made by the defendant, or copies thereof, within the possession, custody or control of the state, the existence of which is known, or by the exercise of due diligence may become known, to the attorney for the state; that portion of any written record containing the substance of any relevant oral statement made by the defendant, whether before or after arrest in response to interrogation by any person then known to the defendant to be an agent of the state; and recorded testimony of the defendant before a grand jury which relates to the offense charged. *The state must also disclose to the defendant the substance of any other relevant oral statement made by the defendant whether before or after arrest in response to interrogation by any person then known by the defendant to be an agent of the state if the state intends to use that statement at trial.*

(Emphasis added).

9

permitted, his defense—that he was sober when the accident occurred and that he consumed the heroin in an effort to dispose of it—was obliterated at trial due to the surprise. He asserts that the State had an ongoing obligation to supplement its discovery disclosure, and that in failing to disclose the oral confession, the State violated the discovery rules.

The State rebuts this argument and contends that Mr. Costello's objections regarding discovery violations were not raised below in his motions for mistrial. As such, it is the State's position that this argument cannot be raised for the first time on appeal. According to the State, Mr. Costello sought a mistrial on two grounds: (1) the probation officer's testimony violated the trial court's *in limine* ruling that excluded one of Mr. Costello's written admissions; and (2) the trial court should have conducted a voluntariness hearing to determine whether Mr. Costello's oral confession was voluntary. Therefore, because the trial court was never asked to rule on whether a discovery violation occurred, it is improper for this Court to address this issue on appeal.

In general, a party who has not raised a particular issue or defense below may not raise it for the first time on appeal. "Indeed, if any principle is settled in this jurisdiction, it is that, absent the most extraordinary circumstances, legal theories not raised properly in the lower court cannot be broached for the first time on appeal. We have invoked this principle with a near religious fervor." *State v. Miller*, 197 W. Va. 588, 597, 476 S.E.2d 535, 544 (1996). This Court stated in *State ex rel. Cooper v. Caperton*, 196 W. Va. 208, 216, 470 S.E.2d 162, 170 (1996):

10

To preserve an issue for appellate review, a party must articulate it with such sufficient distinctiveness to alert a circuit court to the nature of the claimed defect. The rule in West Virginia is that parties must speak clearly in the circuit court, on pain that, if they forget their lines, they will likely be bound forever to hold their peace. . . . The forfeiture rule that we apply today fosters worthwhile systemic ends[,] and courts will be the losers if we permit the rule to be easily evaded. It must be emphasized that the contours for appeal are shaped at the circuit court level by setting forth with particularity and at the appropriate time the legal ground upon which the parties intend to rely.

Moreover, it has been noted that

"'[o]ne of the most familiar procedural rubrics in the administration of justice is the rule that the failure of a litigant to assert a right in the trial court likely will result' in the imposition of a procedural bar to an appeal of that issue." *Miller*, 194 W. Va. at 17, 459 S.E.2d at 128, *quoting United States v. Calverley*, 37 F.3d 160, 162 (5th Cir.1994) (en banc), *cert. denied*, 513 U.S. 1196, 115 S. Ct. 1266, 131 L.Ed.2d 145 (1995). Our cases consistently have demonstrated that, in general, the law ministers to the vigilant, not to those who sleep on their rights. . . . When a litigant deems himself or herself aggrieved by what he or she considers to be an important occurrence in the course of a trial or an erroneous ruling by a trial court, he or she ordinarily must object then and there or forfeit any right to complain at a later time.

*State v. LaRock*, 196 W. Va. 294, 316, 470 S.E.2d 613, 635 (1996).

In the case *sub judice*, Mr. Costello did not take the necessary measures to preserve the issue of a discovery violation. Before the trial, the assistant prosecutor for Jefferson County interviewed the probation officer and inquired as to the details of his meeting with Mr. Costello. The probation officer noted that Mr. Costello provided a written confession in which he admitted to being in possession of heroin, but he did not

11

disclose the existence of an oral confession. Likewise, Mr. Costello did not disclose to his counsel that he had made an oral confession to the probation officer. Thus, while Mr. Costello's counsel moved, *in limine*, to suppress the written confession, neither he nor the State's attorney had knowledge of the oral confession.

After the probation officer testified to Mr. Costello's oral confession during direct examination, Mr. Costello's counsel did not object, and he also did not move to strike the testimony. Similarly, his counsel did not object or move to strike the testimony during re-direct examination. Rather, Mr. Costello's counsel waited until the completion of the probation officer's testimony, and then requested a sidebar. During the sidebar, his "counsel sought a mistrial on the basis that such testimony was foreclosed by the [c]ourt's earlier ruling that one of the two written statements made by [Mr.] Costello was inadmissible." The motion for mistrial was denied because the oral confession was unknown to both parties and it was not part of the court's earlier analysis regarding the admissibility of the written statements. After the motion for mistrial was denied, Mr. Costello testified on his own behalf and admitted that he had made the oral confession as the probation officer described. Once again, post-trial, Mr. Costello filed a motion for a new trial and argued that the trial court erred in failing to grant a mistrial and in failing to conduct a hearing to determine whether his oral confession to the probation officer was voluntarily made.

From the record, it is apparent that Mr. Costello failed to preserve a discovery objection to the oral confession disclosed by the probation officer. Once the probation officer testified, Mr. Costello's counsel made no objection. More interestingly, Mr. Costello then chose to testify and conceded that he did make the confession. When his counsel did object to the testimony—in the motions for mistrial and motion for a new trial—his objections were never based on a violation of the discovery rules. Therefore, we find that the objection was waived because it was not raised below. Thus, we find that the circuit court did not err in denying Mr. Costello's motions for mistrial.

**2. Harmless Error.** Even assuming, *arguendo*, that Mr. Costello had properly preserved his discovery objection, his argument does not survive a harmless error analysis. When analyzing trial errors, this Court generally views them in two subcategories: (1) evidence introduced by the State which is claimed inadmissible; and (2) evidence offered by the defendant but rejected at trial.

> When dealing with the wrongful admission of evidence, we have stated that the appropriate test for harmlessness articulated by this Court is whether we can say with fair assurance, after stripping the erroneous evidence from the whole, that the remaining evidence was independently sufficient to support the verdict and the jury was not substantially swayed by the error.

*State v. Guthrie*, 194 W. Va. 657, 684, 461 S.E.2d 163, 190 (1995).

As explained above, the admission into evidence of Mr. Costello's oral confession occurred during the State's direct examination of the probation officer. On

13

appeal, Mr. Costello contends that the undisclosed statement violated discovery rules, contravened the court's prior ruling regarding his written statements, and "uprooted his defense: that he was sober when the accident occurred and subsequently swallowed the heroin to dispose of the drugs."

Our initial inquiry is whether the State's case, absent this testimony, proved the crime so that the jury would be convinced of Mr. Costello's guilt beyond a reasonable doubt. After reviewing the trial transcripts, we conclude that sufficient evidence was provided at trial—without the probation officer's testimony—for a jury to convict Mr. Costello. In particular, the jury heard testimony regarding recorded jail house phone calls between Mr. Costello and his fiancée, as well as with his mother, from which the jury could have reasonable concluded that Mr. Costello consumed the heroin prior to the accident.

During the trial, Mr. Costello's fiancée testified about a conversation that she had with Mr. Costello after his arrest. In the recorded conversation, Mr. Costello admits—in code—that the accident likely occurred because he was impaired after using heroin:

> Mr. Costello's Counsel: Do you – do you remember a conversation he had with you where he tried to use code to describe what had happened?
>
> Fiancée: Yes.
>
> Mr. Costello's Counsel: Talked about bubble gum?
>
> Fiancée: Yes.

14

> Mr. Costello's Counsel:  I'm going to read that passage to you from that call, okay.  I want you to tell me what your understanding of it was at that time.  He says, "Can you read between the lines here?  You listening?"  And you say, "Yeah."  He says, "It was an accident."  You say, "I understand that."  He says, "But I had one – I had a couple pieces of bubble gum, you hear me?"  You call him an idiot.
>
> Fiancée: Yes.
>
> Mr. Costello's Counsel:  He says, "That I chewed up.  You listening?"  You say, "Uh-huh."  "It did that to me.  That's where all of that came from, Babe.  I deserve it one hundred percent."

Additionally, the jury heard testimony from eyewitnesses who testified that Mr. Costello exhibited behavior of being under the influence of drugs at the time of the accident.  One of these witnesses was Beth Ann Gearheart—a recreation therapist who worked for twenty years in the addiction unit with individuals who were struggling with addictions.  Ms. Gearheart was driving home from work and witnessed the automobile accident.  After seeing a vehicle go airborne and land on its hood near her car, she exited her car and looked inside of the crashed vehicle.  The man inside the vehicle was Mr. Costello.  During her testimony, Ms. Gearheart was asked to describe his appearance as he exited his vehicle:

> Ms. Gearheart: He was very disoriented.  I asked him if he was okay.  He said "What had happened?"  His eyes were red.  He smelled of alcohol.  His eyes were glossy, very disoriented, and like, wouldn't even let me really take a look at him.  He just wanted to kind of – he kept walking and pacing, and I would just keep following him and trying to get a look at him to make sure he was okay.
>
> . . .

15

> To me he appeared to be under the influence. I mean, just very disoriented. Didn't want you to bother him.

The next inquiry in the harmless error test is to examine the impact of the error on the jury verdict.

> In any inquiry into the prejudicial impact of the error, we will be guided by whether the record reveals that the error was repeated or singled out for special emphasis in the State's argument. We will scrutinize the record to determine if the error became the subject of a special instruction to the jury, or produced question from the jury. Also of importance is the overall quality of the State's proof.

*Atkins*, 163 W. Va. at 514-15, 261 S.E.2d at 62. We find that the admission of the probation officer's testimony was not error; however, even if it was erroneous, it did not have a prejudicial impact on the jury verdict. Although this statement—regarding an oral confession by Mr. Costello—was consistent with the State's theory of the case, the State presented ample evidence through other means such as eyewitness testimony and testimony from Mr. Costello's family and friends. Furthermore, on a closer examination of the trial transcript, it is clear that the State did not unnecessarily repeat or emphasize the probation officer's testimony. Rather, during closing, the State relied on the consistent testimony across a wide variety of witnesses—police officers, eyewitnesses, friends, and family—to convince the jury of Mr. Costello's guilt. Taking all of this evidence as a whole and excluding the probation officer's testimony regarding Mr. Costello's oral confession, we conclude that the jury would be convinced that the State proved its case beyond a reasonable doubt. Therefore, even if the probation officer's testimony was wrongfully admitted, we find it was harmless error.

16

### B. *Sufficiency of the Evidence*

Mr. Costello next contends that the State presented insufficient evidence of his prior Maryland conviction during the recidivist trial because it did not introduce a judgment order. Additionally, he argues that the trial court's ruling—that his prior convictions qualified as "crime[s] punishable by confinement in a penitentiary" as a matter of law—relieved the State of its burden of proof and improperly directed a verdict on the character of his convictions.

**1. Evidence to Support Maryland Crime.** First, Mr. Costello alleges that the State presented insufficient evidence of his Maryland conviction. When reviewing sufficiency of the evidence challenges, the standard is as follows:

> The function of an appellate court when reviewing the sufficiency of the evidence to support a criminal conviction is to examine the evidence admitted at trial to determine whether such evidence, if believed, is sufficient to convince a reasonable person of the defendant's guilt beyond a reasonable doubt. Thus, the relevant inquiry is whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proved beyond a reasonable doubt.
>
> . . . .
>
> A criminal defendant challenging the sufficiency of the evidence to support a conviction takes on a heavy burden. An appellate court must review all the evidence, whether direct or circumstantial, in the light most favorable to the prosecution and must credit all inferences and credibility assessments that the jury might have drawn in favor of the prosecution. The evidence need not be inconsistent with every conclusion save that of guilt so long as the jury can find guilt beyond a reasonable doubt. Credibility determinations are for a jury and

17

not an appellate court. Finally, a jury verdict should be set aside only when the record contains no evidence, regardless of how it is weighed, from which the jury could find guilt beyond a reasonable doubt. To the extent that our prior cases are inconsistent, they are expressly overruled.

Syl. pts. 1 and 3, *State v. Guthrie*, 194 W. Va. 657, 461 S.E.2d 163 (1995). We also have held that

> [w]hen a criminal defendant undertakes a sufficiency challenge, all the evidence, direct and circumstantial, must be viewed from the prosecutor's coign of vantage, and the viewer must accept all reasonable inferences from it that are consistent with the verdict. This rule requires the trial court judge to resolve all evidentiary conflicts and credibility questions in the prosecution's favor; moreover, as among competing inferences of which two or more are plausible, the judge must choose the inference that best fits the prosecution's theory of guilt.

Syl. pt. 2, *State v. LaRock*, 196 W. Va. 294, 470 S.E.2d 613 (1996).

Mr. Costello alleges that the State failed to present sufficient evidence to prove his Maryland conviction beyond a reasonable doubt. In particular, he argues that the State should have produced an order adjudicating him guilty of a felony. As such, Mr. Costello contends that the State presented insufficient evidence and this Court should therefore vacate his life sentence and remand the case for a new sentencing hearing.

The State maintains that the sum total of the documents it presented conclusively, unequivocally, and sufficiently establishes that Mr. Costello was convicted of a crime—possession of heroin with intent to distribute—in Frederick County, Maryland and was sentenced to twenty-five years of imprisonment with ten of those years suspended.

18

To establish Mr. Costello's Maryland conviction, the State produced docket sheets; documents generated the day of the arrest (complaint, commitment pending hearing, and initial appearance questionnaire); courtroom worksheets; probation/supervision order; a certified commitment order completed by the Circuit Court of Frederick County; Maryland sentencing guideline worksheet; and Mr. Costello's probation transfer request and approval. The State also elicited testimony from Mr. Costello's mother and girlfriend.

> In *State v. Guthrie*, this Court stated that
>
> [a]ppellate courts can reverse only if no rational jury could have found the defendant guilty beyond a reasonable doubt. This standard is a strict one; a defendant must meet a heavy burden to gain reversal because a jury verdict will not be overturned lightly.
>
> . . . .
>
> [W]hen reviewing a conviction, we may accept any adequate evidence, including circumstantial evidence, as support for the conviction. It is possible that we, as an appellate court, may have reached a different result if we had sat as jurors. However, [ ] it does not matter how we might have interpreted or weighed the evidence. Our function when reviewing the sufficiency of the evidence to support a criminal conviction is to examine the evidence admitted at trial to determine whether such evidence, if believed, is sufficient to convince a reasonable person of the defendant's guilt beyond a reasonable doubt. Thus, the relevant inquiry is whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proved beyond a reasonable doubt.

194 W. Va. at 667-68, 461 S.E.2d at 173-74 (1995).

After reviewing the record, we find that the evidence presented at trial illustrates that Mr. Costello cannot meet the heavy burden as set forth in *State v. Guthrie.* While Mr. Costello offers a conclusory assertion that the evidence put forth to prove the Maryland conviction was insufficient because of the lack of a judgment order, he does not offer anything to demonstrate that the evidence *that was presented* was inadequate on its own. Although judgment orders are typically used as evidence in recidivist trials, "we may accept any adequate evidence, including circumstantial evidence, as support for the conviction." *Id.* at 668, 461 S.E.2d at 174. The State introduced sufficient evidence of the Maryland conviction, including a certified commitment order and witness testimony establishing, beyond a reasonable doubt, that Mr. Costello was convicted in that state of possession of heroin with intent to distribute and was sentenced to twenty-five years in prison. The commitment order, described above, in and of itself was sufficient evidence for a jury to find that petitioner had been convicted of that crime. However, the State did not stop there, but, rather, provided additional documentation as further evidence of the Maryland conviction: a certified sentencing worksheet from that case that was signed by the presiding judge and which noted Mr. Costello's conviction and sentence imposed; an initial appearance questionnaire relating to the case; and a transfer request. Mr. Costello's mother and girlfriend also testified that he had been convicted of a drug crime in Maryland. Accordingly, we find that, when taken as a whole, the evidence put forth by the State was sufficient to support a finding that Mr. Costello was convicted of the Maryland crime.

**2.     Prior Convictions Under West Virginia Code Section 61-11-18.**

Next, Mr. Costello alleges that the trial court erred when it improperly directed a verdict on the element of the character of his prior convictions.  He contends that the State was required to prove every element of his crimes beyond a reasonable doubt and one element that must be proven during a recidivist trial is the correct character of a prior conviction—that is, whether the prior conviction was a felony or a misdemeanor.  Mr. Costello maintains that by instructing the jury that the alleged prior convictions were, as a matter of law, felonies punishable by imprisonment, the State was relieved of its burden to prove the character of the prior offenses beyond a reasonable doubt.

The State asserts that the trial court correctly ruled that whether Mr. Costello's previous convictions fall within the parameters of West Virginia Code section 61-11-18 was a question of law.  Further, the corresponding jury instruction—that the alleged prior convictions constituted "crimes punishable by confinement in a penitentiary"—was proper.

This Court has never decided the issue of whether, for purposes of a recidivist proceeding, a conviction for a certain crime qualifies as a crime punishable by confinement in a penitentiary is a question of law for the court or a question of fact for a jury.  Other courts, however, have considered this question.  The Supreme Court of Indiana examined this issue in *Griffin v. State*, 275 Ind. 107, 118-19, 415 N.E.2d 60, 67 (1981) and provided the following rationale:

21

Permitting the jury to determine whether Griffin's prior convictions, for theft and entering to commit a felony, were for felonies, would invite their independent judgment as to the fairness of the categorization of those offenses as felonies by the legislature. Whether the jury approves of the categorization of the offenses as felonies has no bearing on whether the accused has been convicted of those offenses. Thus, allowing the jury to make such a judgment would give that body the opportunity to move far outside its realm and consider totally irrelevant factors in deciding the defendant's status as a habitual offender. In addition, permitting the jury to determine whether a given offense is a felony would allow them to decide a pure question of law which has previously been settled by the legislature; given such an opportunity, the jury might possibly reach a different conclusion from that properly drawn by the legislature.

*Accord United States v. Campbell*, 94 F.3d 125 (4th Cir. 1996) ("Court of Appeals reviews district court's imposition of offense level increase under Sentencing Guidelines de novo, inasmuch as it involves interpretation of statute, which presents question of law."); *State v. Brown*, 452 So.2d 326, 329 (La. Ct. App. 1984) ("All the jury was required to know was that the defendant had been convicted of a crime which would have been a felony under Louisiana law. That determination is a question of law, not fact, and thus was not required to be presented to the jury."); *State v. Burgess*, 216 N.C.App. 54, 56, 715 S.E.2d 867, 870 (2011) ("Whether an out-of-state offense is substantially similar to a North Carolina offense is a question of law involving comparison of the elements of the out-of-state offense to those of the North Carolina offense."). In summary, "[t]he legislature never intended to leave the grade of any offense to the discretion of a jury." *Benton v. Commonwealth*, 89 Va. 570, 572, 16 S.E. 725, 725 (1893)

We agree with the conclusion of these jurisdictions. The key inquiry for a jury in a recidivist proceeding is the identity of the defendant. *See State v. Barlow*, 181 W. Va. 565, 571, 383 S.E.2d 530, 536 (1989) ("The defendant's identity in an habitual criminal proceeding is the key factual issue, and the burden is, of course, on the State to establish that the defendant is the same individual who was convicted previously"); *State v. Vance*, 164 W. Va. 216, 262 S.E.2d 423 (1980) ("Where the issue of identity is contested in an habitual criminal proceeding, the State must prove identity beyond a reasonable doubt."). *Accord State v. McMannis*, 161 W. Va. 437, 242 S.E.2d 571 (1978); *State v. Lawson*, 125 W. Va. 1, 22 S.E.2d 643 (1942). However, while the jury is responsible for making the factual determination of identity, it should not be tasked with deciding a purely legal question—whether a particular crime is a felony or misdemeanor. *See Harrison v. Town of Eleanor*, 191 W. Va. 611, 616, 447 S.E.2d 546, 551 (1994) ("Consequently, it is well-established that determinations involving questions of law are within the sole province of the court, while determinations of fact are within the province of the jury. Thus, the court must resolve questions of law and cannot delegate that responsibility to the jury. When a court permits a jury to make legal determinations, reversible error occurs here.").

Instructing a jury whether prior crimes are felonies or misdemeanors does not relieve the State of its burden in a recidivist proceeding. Rather, this inquiry involves a legal question regarding the interpretation of a statute which is within the purview of the judge; the jury is tasked with determining the factual issue of identity. We hold, therefore, that for purposes of a recidivist proceeding, whether a conviction for a certain crime

23

qualifies as a crime punishable by confinement in a penitentiary is a question of law for the court. As such, in the case *sub judice*, we find that the trial court did not err when it instructed the jury that Mr. Costello's prior crimes constituted crimes punishable by confinement in a penitentiary under the law.

### C. Proportionality of Life Sentence

Mr. Costello's final assignment of error is that his life sentence is disproportionate. While he acknowledges that his triggering offense—DUI causing serious bodily injury—involved actual violence, he contends that his predicate felonies did not involve actual or threatened violence. This Court has held that sentencing orders are reviewed "under a deferential abuse of discretion standard, unless the order violates statutory or constitutional commands. Syllabus Point 1, in part, *State v. Lucas*, 201 W. Va. 271, 496 S.E.2d 221 (1997)." Syl. pt. 1, *State v. James*, 227 W. Va. 407, 710 S.E.2d 98 (2011). As we have further described, "[s]entences imposed by the trial court, if within statutory limits and if not based on some [im]permissible factor, are not subject to appellate review." Syl. pt. 4, *State v. Goodnight*, 169 W. Va. 366, 287 S.E.2d 504 (1982).

Under West Virginia's recidivist statute, "[w]hen it is determined, as provided in section nineteen of this article, that such person shall have been twice before convicted in the United States for a crime punishable by confinement in a penitentiary, the person shall be sentenced to be confined in the state correctional facility for life." W. Va. Code § 61-11-18(c). Here, Mr. Costello argues that his recidivist life sentence violates the

24

proportionality principle of the West Virginia Constitution because his prior crimes do not show a pattern of violence.

> "Article III, Section 5 of the West Virginia Constitution, which contains the cruel and unusual punishment counterpart to the Eighth Amendment of the United States Constitution, has an express statement of the proportionality principle: 'Penalties shall be proportioned to the character and degree of the offence.'" Syllabus Point 8, *State v. Vance*, [164 W. Va. 216], 262 S.E.2d 423 (1980).

Syl. pt. 3, *Wanstreet v. Bordenkircher*, 166 W. Va. 523, 276 S.E.2d 205 (1981). Furthermore, "[w]hile our constitutional proportionality standards theoretically can apply to any criminal sentence, they are basically applicable to those sentences where there is either no fixed maximum set by statute or where there is a life recidivist sentence." Syl. pt. 4, *id.*

When evaluating whether a recidivist life sentence is constitutional, we examine the following:

> The appropriateness of a life recidivist sentence under our constitutional proportionality provision found in Article III, Section 5 [of the West Virginia Constitution], will be analyzed as follows: We give initial emphasis to the nature of the final offense which triggers the recidivist life sentence, although consideration is also given to the other underlying convictions. The primary analysis of these offenses is to determine if they involve actual or threatened violence to the person since crimes of this nature have traditionally carried the more serious penalties and therefore justify application of the recidivist statute.

Syl. pt. 7, *State v. Beck*, 167 W.Va. 830, 831, 286 S.E.2d 234 (1981).

25

More recently, in *State v. Hoyle*, 242 W. Va. 599, 836 S.E.2d 817 (2019), this Court recognized the need for development in the approach we use to determine whether a recidivist life sentence is constitutionally proportionate. In Syllabus point 12 of *Hoyle*, we held that

> [f]or purposes of a life recidivist conviction under West Virginia Code § 61-11-18(c), two of the three felony convictions considered must have involved either (1) actual violence, (2) a threat of violence, or (3) substantial impact upon the victim such that harm results. If this threshold is not met, a life recidivist conviction is an unconstitutionally disproportionate punishment under Article III, Section 5 of the West Virginia Constitution.

*Id.* Thus, whether Mr. Costello's life sentence is constitutional in this matter turns on whether two of his felony convictions involved actual violence or, the potential for violence, or had a substantial impact upon the victim.

Applying the *Hoyle* test to the case *sub judice*, we find that Mr. Costello's recidivist life sentence should be upheld as constitutionally proportionate. First, it is unquestionable that Mr. Costello's triggering offense—DUI causing serious bodily injury—involved actual violence and had a substantial impact on the child victim who sustained permanent injuries as a result of the crash. Mr. Costello conceded this below and in this appeal. Therefore, we proceed to examine Mr. Costello's predicate offenses.

In September of 2000, Mr. Costello obtained his first felony conviction— distribution of crack cocaine—when he entered a plea agreement in the United States

26

District Court for the Northern District of West Virginia.  Pursuant to the plea agreement, he stipulated that, for sentencing purposes, his relevant conduct included 315 grams of cocaine base, three kilograms of marijuana, and eighty-seven grams of cocaine HCL.

Mr. Costello's second felony conviction arose from his December 30, 2011 arrest.  He was arrested when the car in which he was traveling from Maryland to West Virginia was pulled over and he was found to be in possession of three bags of heroin.  Mr. Costello entered a plea agreement and pled guilty to possession with intent to distribute heroin.  He was originally sentenced to twenty-five years in prison with all but ten years suspended.  However, his sentence was amended in 2015, and he was released on supervised probation.

Due to the nature of both of Mr. Costello's predicate drug convictions, we conclude that both involved the threat of violence.  In *State v. Norwood*, 242 W. Va. 149, 832 S.E.2d 75 (2019), this Court looked at the nature of the drug at issue—heroin—in determining whether the crime carried an inherent risk of violence.  The Court ultimately found that "heroin is illegal, and is a scourge that has saturated our State" 242 W. Va. at 158, 832 S.E.2d at 84, and, thus, "[t]he delivery and ultimate use of heroin carries with it an inherent risk of violence to a person." *Id.*  *See also State v. Gaskins*, No. 18-0575, 2020 WL 3469894 (W. Va. June 25, 2020) (memorandum opinion) (likening cocaine to heroin, citing the "substantial impact on the victim of the crime . . . due to [the drug's] often fatal nature to its users").

When discussing Mr. Costello's first felony, the trial court found:

> Defendant Costello's first felony involved the distribution of over 400 grams of cocaine base/HCL in addition to 3,000 grams of marijuana. *See United States v. Costello* Plea Agreement, State's Exhibit 9B in Recidivist Trial (Doc. No. 410-13). This Court cannot ignore the substantial amount of cocaine involved in the crime nor the significant risk of serious bodily injury or death that the distribution of cocaine creates. Although not the current impetus of the overdose epidemic arising from opioid distribution, cocaine use can result in serious bodily injury or death.
>
> . . . .
>
> Defendant's participation in the distribution of a large amount of a dangerous narcotic elevates the risk that recipients of the poison will suffer serious bodily injury or death from an overdose and enables end users to create additional danger to others, for example, by driving under the influence of the controlled substance. Although Defendant may not have specifically intended any bodily injury or death to arise from his drug-dealing, he nevertheless significantly elevated the danger to society by participating in the distribution of a large amount of a potentially lethal narcotic.

The trial court also commented on Mr. Costello's heroin conviction:

> It is beyond cavil that the opioid epidemic has wreaked havoc on our society, ruining or extinguishing countless lives in the process. Instead of correcting his behavior after his first drug conviction and sentence, Defendant began distributing an even more dangerous drug. If nobody died from the heroin Defendant distributed into the community, it was the result of sheer fortuity. . . . [T]his Court finds Defendant's conviction for possession with intent to distribute heroin is a crime of violence for recidivist purposes.

When taking all of this information into consideration, we conclude that both of Mr.

Costello's predicate felonies involved an inherent threat of violence.

28

Therefore, because his triggering offense involved actual violence, as well as significant, actual harm to another, and both of his predicate felonies involved the threat of violence, the *Hoyle* threshold is satisfied. Accordingly, we conclude that the sentence imposed by the trial court was not an unconstitutionally disproportionate punishment under Article III, Section 5 of the West Virginia Constitution.

## IV.

## CONCLUSION

For the reasons set forth above, we find no error and therefore affirm Mr. Costello's recidivist conviction and sentence.

Affirmed.